Christian, J.
This case is before us on appeal from a decree of the circuit court of Fredericksburg.
The following facts are proved by the record: that in April, 1874, Carter M. Braxton applied to W. P. Conway, of the banking house of Conway, Gordon & Garnett,, for the negotiation of a loan of $3,000, to secure which he agreed to execute a deed of trust on a certain lot, factory and planing mill, and the machinery therein contained ; the said Carter M. Braxton representing the same-to be his property and to be worth tbe aggregate sum of $9,000.
Upon this security the appellant, J.ohn C. Shelton, loaned the sum of $3,000, negotiated by the said W. P. Conway, to the said Carter M. Braxton, who on the 14th April,. 1874, executed a deed by which he conveyed a certain lot of land in the town of Fredericksburg, described in said deed as containing one acre of land, “ on which said lot of land the said Carter M. Braxton has erected a planing-mill and spoke factory,” in trust to secure a debt to John C. Shelton for the sum of $3,000, evidenced by a bond payable three years after date, with interest from the 11th day of April, 1874, (pay semi-annually) at the rate of eight per centum per annum. And the said deed further provided that whereas the said Carter M. Braxton had effected a policy of insurance on the said planing mill, spoke factory and machinery, he, by the same deed conveyed and assigned to the said Conway, for the purposes of the trusts therein declared, the said policy of insurance, and covenanted and bound himself to renew and continue said insurance in full force until the debt secured by the said deed of trust should be fully paid off and discharged. *729 And the said C. M. Braxton further bound himself in said deed punctually to pay the interest on said debt and the premiums on said insurance, and that the failure of the payment of either should be such default as to authorize the trustee, Conway, upon the demand of the said John C. Shelton or his heirs to execute the trust created by said deed.
This deed of trust was admitted to record in the clerk’s office of the corporation court of Fredericksburg on the 15th day of April, 1874.
It was further shown by the record before us that the said C. M. Braxton formed and entered into a co-partnership with one John C. Barry in the lumber business and for the manufacture of spokes, staves and such other articles as they should determine from time to time to manufacture. And, according to the terms of the partnership, Braxton was to put in two-thirds of the capital and Barry one-third; and the profits to be divided upon this basis. This contract of partnership, though reduced to writing, was not signed by the parties, nor was it ever recorded; but the only evidence of the partnership exhibited to the public was a sign placed over the factory and advertised in other places, in these words:
“Braxton & Barry, dealers in all kinds of lumber, also carriage and wagon spokes, at their factory and planing mill, near depot.”
On the 29th day of April, 1875, Braxton & Barry executed a deed of trust to Ficklin and McCracken, trustees, by which they conveyed “ all the property, assets and effects of every kind and description belonging to said firm and to which said firm is in any manner entitled, embracing the following property, to wit: all the spokes, spoke timber material and other personal property at the spoke factory operated by said firm in the town of Fredericksburg; aisoall debts of every kind due to or to become due to said firm, and all choses in action, rights, credits and *730 accounts belonging to said firm; also four mules and a wagon belonging to said firm, and all other property and • assets of every kind and description belonging to said firm or in which they have an interest.
This property was conveyed to the said trustees upon certain trusts declared in said deed, not necessary now to be referred to, except to remark that the objects and purposes of said deed were to secure the partnership creditors of Braxton & Barry, and to authorize the said trustees to work up the material on hand in-said factory, and to sell all the property belonging to said firm conveyed by said deed, upon such terms of cash or credit as they might deem most judicious and best calculated to realize the best prices for the same.
The record further shows that the proceedings in this case were commenced by a bill of injunction filed by Ficklin, one of the trustees named in the second deed, above referred to; which bill, after reciting “ that W. P. Conway, the trustee in the deed of the 14th April, 1874, did, on the 4th August, 1874, close said deed by a sale at public auction of the said lot on which said factory stands, and did also undertake to sell the machinery in said building belonging to the partnership of Braxton & Barry, and said lot, building and machinery was knocked down to Terence McCracken at the price of $3,375; being less than the principal and interest of the Shelton debt—the terms being one-third cash and the remainder in one and two years” ; then prayed “ that the said Conway and McCracken may be enjoined and restrained from paying over any of the proceeds of said sale to said Shelton, and that it may be referred to the commissioner of your honor’s court to ascertain what proportion of the purchase money aforesaid represents a fair value of the machinery embraced in said sale, or such other order as may be proper to protect the social creditors of said Braxton & Barry, and that the same-may be applied to the satisfaction of said partnership indebtedness, and for general relief.”
*731 Conway, the trustee, and John C. Shelton, whose debt was secured by the deed of the 14th April, 1874, filed their joint answer to this bill of injunction, in which answer they-admit that said three thousand dollars was loaned to Carter M. Braxton individually, and they aver and are prepared to prove that the following is the true state of the case, and of the facts connected with said loan, namely: That in the month of April, 1874, said Carter M. Braxton, who was then the owner of the freehold to the lot and factory and planing mill built thereon, and also the machinery therein, all of which lot, building and machinery was owned by said Braxton long before the partnership set out in the bill of the plaintiff, applied to said respondent^ ~W. P. Conway, a banker of Fredericksburg, to negotiate a loan for him for $3,000, on the lot, factory, planing mill and machinery contained in and forming part of said factory and planing mill, the said Carter M. Braxton representing the same to be his property, and to be worth in the aggregate the sum of $9,000, and the said Braxton agreed to execute a deed of trust on all of this property to secure the payment of said $3,000 and interest.
They further aver in their answer, that at that time, or until after said deed was executed, they had no notice of any partnership agreement existing between Braxton & Barry, but they knew the fact that the freehold had been purchased by and belonged to Carter M. Braxton; that the planing mill and spoke factory had been built on the freehold for and by the order of Carter M. Braxton, and the machinery placed in and annexed to said mill and factory by the order of C. M. Braxton, and at his individual expense, and they are now prepared to prove by the books of the said Braxton & Barry that none of said machinery was ever carried to the credit of said Braxton & Barry, as partnership assets on the books of said firm, until some seven months after the execution of said deed of trust securing said $3,000. Upon these representations made by Carter *732 M. Braxton, and without any notice whatever of any partnership agreement, and with the knowledge of the above - facts, except that which these respondents expect to prove by the books of the said firm, and upon the consideration of the machinery (for the lot and building without the machinery was not worth $1,000), the said respondent, John C. Shelton, loaned said Braxton the said sum of $3,000, and the said Braxton executed the deed of trust herewith filed, marked X, by which the said Braxton and wife undertook, intended to and did convey the lot of land on which the factory and planing mill stands, together with all the machinery contained therein and affixed thereto; a list of which machinery, showing the manner it is affixed and bolted to the building, is herewith filed as a part of this-answer, marked exhibit T. These respondents, therefore, deny the allegation in the bill of the complainant that the deed of trust from Braxton to Conway, trustee, did not, according to its legal construction, convey or undertake to convey the aforesaid machinery.
These respondents answering further, deny that there was ever any legal input to the partnership of the “valuable machinery,” as set out in the said bill, so as to bind a purchaser of the same without notice; they deny further the allegation that “the machinery never became a part of the realty,” and claim that the machinery became a part, of the realty as soon as it was affixed to the building, anterior to the date of the partnership, and was part and parcel of the same at the time of the execution of the deed of trust to the respondent, Conway, and passed to said trustee by said deed, and had never, anterior to said deed, been assigned to the said partnership or otherwise—certainly not so assigned as to bind a purchaser for value of the realty (of which the machinery was part), without notice ; therefore these respondents claim that none of this machinery, under any circumstances, can be liable to the satisfaction of the social debts contracted by said firm, in *733 preference to the satisfaction of the debt due this respondent, Shelton.
On the 24th day of December, 1875, the cause came on - to be heard upon the bill and answers and exhibits filed, and upon certain depositions taken in the cause; upon consideration whereof the circuit court was of opinion that the machinery in the bill and proceeding mentioned was liable for the payment of the partnership indebtedness of the firm ■of Braxton & Barry, in preference to the individual indebtedness of C. M. Braxton, and that the proceeds of the sale of said machinery made by said W. P. Conway, trustee, to Terence McCracken, on the 4th of August, 1875, was liable to the payment of said partnership indebtedness before the same can be applied to the payment of the individual indebtedness of said Braxton to John C. Shelton. And after so adjudging, the court directed one of its commissioners to ascertain and report what proportion of said sale made by Conway, trustee, represents the machinery in said spoke factory, and to report any other matter deemed pertinent by the commissioner, or desired by any party interested.
In response to this decree, the commissioner reported that the said machinery represents six-tenths of the proceeds of said sale. That the net proceeds, as appears from the report of the trustee, W. P. Conway, amounts to the sum of $2,975.78; of which the machinery is six tenths, equal to $1,785.62, and of which the realty is four tenths, equal to $1,190.16.
This report of the commissioner was confirmed .by the ■circuit court, and it was accordingly decreed and ordered that the sum of $1,785.62 (ascertained by said report to represent the.machinery), or so much thereof as may be required, be applied to the satisfaction of the partnership indebtedness, when the same shall be ascertained by a settlement of the trustee’s account.
To these two decrees an appeal was allowed and supersedeas awarded by one of the judges of this court.
*734 I am of opinion that these decrees are plainly erroneous.
The deed from Braxton to Conway, trustee,'was prior-in time to the deed from Braxton & Barry to Ficklin,. trustee, by at least twelve months, and was put upon record in the clerk’s office of the corporation court of Fredericksburg on the day after it was executed—to wit: on the-15th day of April, 1874—and was therefore notice to all the world of the dedication of the property thereby conveyed as security for Shelton’s debt. The deed to Ficklin, trustee, was not executed until the 20th day of April, 1875, and was not admitted to record until the 8th day of May following. The deed to Conway describes the property conveyed as “a certain lot lying and being in the town of Fredericksburg, containing one acre of land, on which said lot of land the said Carter M. Braxton has erected a planing mill and spoke factory.”
It is abundantly proved in the record, that the chief value of this property was the machinery constituting the planing mill and spoke factory, which cost the sum of upwards of $5,000.
It is also shown that the building and land on which it was erected were of comparatively little value, and that said building was erected and adapted solely for the purposes of the factory. This machinery was affixed to the the building and constituted the most important part of the factory, without which the building would have been of little value. It is manifest from the undisputed evidence in the cause, that Conway, the trustee, and Shelton, who loaned the money, in their negotiations with Braxton, gave credit for the large sum of $3,000 on the faith not of the lot and building, but of the valuable machinery which they knew had been attached and affixed to the same. This is the more manifest when it is remembered that in the deed conveying this property to Conway, trustee, it is stipulated that Braxton should convey and assign *735 to Conway a policy of insurance which he had effected on the said planing mill, spoke factory and machinery, and bound himself in said deed to renew and ¿continue said ■ insurance in full force until the debt secured by the deed should be fully paid off and discharged. And in this policy of insurance thus transferred by him to Conway, he (Braxton) represented himself as the sole owner of said machinery.
It thus plainly appears that in negotiating the loan of $3,000, both Conway and Shelton looked to the valuable machinery erected and affixed to the building and on the lot conveyed as their principal security for the money loaned to Braxton.
And I think that it is equally clear that this machinery was a part of' the realty and passed under the deed with the building and lot to which it was attached and conveyed to Conway, trustee.
Upon this point, the decision of this court in the case of Green v. Phillips, 26 Gratt. 752, is conclusive. After a review of both the English and American cases on this subject, it was said, as the unanimous opinion of this court: “ The true rule deduced from all the authorities seems to be this, that where the machinery is permanent in its character and essential to the purposes for which the building is occupied, it must be regarded as realty, and passes with the building, and that whatever is essential to the purposes for which the building is used will be considered as a fixture, although the connection between them may be such that it may be severed without physical or lasting injury to either.”
I think it is clear, therefore, upon the principles declared in Green v. Phillips, (supra,) and upon authority of thé cases therein cited, that the machinery put up and affixed in said building and on said lot passed to Conway, trustee, as a part of the real estate conveyed by said deed, and that said machinery, as well as the lot and building, is liable for Shelton’s debt.
*736 n js insisted, however, by the learned counsel for the ; appellee, and this no doubt was the controlling view of the - circuit court, that the machinery was regarded by both Braxton and Barry as a part of the partnership property, and that Braxton put in said machinery as his part of his inPul; as one °f the partners. It is true it is shown by the record that in December, 1874, the said machinery was transferred from Braxton’s individual books to the partnership books of Braxton & Barry, as Braxton’s input as capital in the partnership of Braxton & Barry. But this was not done until eight months after the deed to Conway, trustee; had been executed'and recorded. This was a private transaction and arrangement between the partners, and was merely entered upon the partnership books, was never 'recorded except on said books, and was, therefore, notice to no one outside the partnership. Certainly no notice of this arrangement was ever brought home to Conway or Shelton; but, on the contrary, Braxton had represented that the said machinery was his individual property, and it was proved to be his property, both from the fact that he had paid for the same, and had effected a policy of insurance upon it, in which he had, represented himself as the sole owner of said machinery, and had transferred to Conway, trustee, this policy, in the very deed which conveyed to him the lot and building on which the said planing mill and machinery were erected.
It cannot be, I think, consistently or reasonably argued, as is contended in this case, that the mere fact that Barry was in possession of the planing mill and machinery was of itself such notice as would put Conway and Shelton upon the enquiry as to who was the real owner of said machinery. For it must be remembered that Braxton, who represented himself to be the owner, was as much in possession of the same as Barry was, and therefore the numerous cases referred to by the learned counsel for the appellee have no application to this case. It might as *737 •well be contended that, because the mill and building were intended to be used in the partnership conducted by Braxton & Barry, that these, too, were partnership assets, and ■ although conveyed by a recorded deed, w'hich gave notice to the world that they had been conveyed to secure the debt to Shelton, yet that the fact that Barry & Braxton had a secret understanding between them that the property was to be so used, and the fact that Barry was in possession of the same (but not less so than Braxton) was of itself notice, which would put Conway and Shelton on enquiry, that Barry claimed the property. Certainly such a pretension cannot be maintained, either on reason or authority.
It is a noteworthy fact, which strongly maintains the views herein expressed, that when Braxton & Barry came to make their deed in 1875—more than a year after Braxton’s deed to Conway had been executed and recorded— they did not convey in said deed the machinery now claimed as part of their partnership assets, but only conveyed in general terms the material on hand, manufactured and unmanufactured, and debts due to the firm, and all their interests generally in the partnership assets.
I am, therefore, of opinion that it is plain upon the record before us that the deed from Braxton to Conway, trustee, conveying to him the lot of land described in said deed as the lot upon which he had erected a planing mill and spoke factory, carried with it also the machinery, which was affixed to the building, as part of the realty, and was therefore liable for the debt secured to Shelton, and upon the faith and credit of which he advanced his money ¡ it being indisputably proved in the record that the lot and building, without the machinery, was not worth half the sum advanced by Shelton.
I am, therefore, ^of opinion that the decrees appealed from should be reversed, and that the fund reported by *738 the commissioner to be in the hands of Conway, trustee, should be first applied to the payment of Shelton’s debt.
Burks, J.
For the better understanding of the reasons which have led me to a conclusion in this case different from that reached by a majority of the court, 1 deem it proper to give a statement of the material facts presented by the record.
In September, 1873, Carter M. Braxton, with the view of engaging in the business of manufacturing spokes for carriages, wagons, &c., and in contemplation of a partnership in the business with John C. Barry, purchased a vacant lot in the town of Fredericksburg, upon which he proceeded to erect a factory building suitable for the machinery needed for the business, and also purchased the machinery adapted to the house and business, and paid for the whole out of his own means—$550 for the lot, nearly $6,000 for the machinery and putting it up, and the cost of erecting the building, whatever that was. The building, when afterwards insured, was valued at $1,400. All of the machinery, except a comparatively small portion purchased at a subsequent time, was delivered at the factory by the 1st day of January following (1874), when the workmen, employed for the purpose, commenced putting it up, and completed the work during that month, probably by the middle of the month. On the said 1st day of January Braxton & Barry entered into the partnership theretofore contemplated. Written articles were drawn up, but for some reason were never signed. It is not necessary to notice the terms of the partnership, and the testimony relating thereto, further than to say that it was one of the terms of the agreement at the time it was entered into on the 1st day of January, and before any of the machinery was put up, that the machinery, which had been wholly paid for by Braxton, should be regarded as partnership assets, although never entered on the books of the firm until *739 December of that year, which is explained in the testimony of each of the .partners as an act of mere omission or neglect.
On the 14th day of April following, Braxton applied to W. P. Conway, a broker in Fredericksburg, to negotiate a loan for him of $3,000 on his individual account, offering to secure it by a deed of trust on the factory lot, building, and machinery, of all of which he represented himself to be the owner. Conway negotiated the loan from John C. Shelton on the terms proposed, with the further stipulation that Braxton should cause the factory building and machinery to be insured and assign the policy of insurance as further security for the loau, to be kept in force by renewal until the loan was fully paid off. The insurance was effected as agreed upon, and a deed of trust to secure the amount of the loan was drawn and' executed, in which Conway was made trustee. Previous to that time Braxton had not acquired the legal title to the factory lot which he had purchased from one Hartman. There was a balance of the purchase money unpaid. He paid this balance, ($374.10,) out of- the money borrowed from Shelton, and took a deed for the lot from Hartman of even date with the deed of trust. The policy of insurance was assigned to the trustee by the deed of trust, and as to the other property conveyed, the grant, subject to the trusts declared, is thus expressed: * * “The said Braxton and wife do grant with general warranty unto the said Conway a certain lot, lying and being in the town of Fredericksburg, containing one acre of land, and fully described in a deed from John Hartman and Wilhelmina, his wife, to the said Carter M. Braxton, bearing even date with these presents, on which said lot of land the said Carter M. Braxton has erected a planing mill and spoke factory.” There is no conveyance of the machinery specifically and in terms, apart from the land on which the building containing the machinery is situated.
*740 Braxton stated in various forms his individual ownership In making this written application for the insurance}, the machinery, which he however described as “ movab]e» It does not appear that Conway or Shelton ever saw this application before the loan was consummated, and ihey probably did not see it, as it must have been in the custody of the insurance company. There is no doubt» however, that both of them believed that Braxton was sole owner of the machinery, as he represented himself to be, that it passed to the trustee under the deed. Otherwise, the loan of $3,000 would hardly have been made, as the value of the property without the machinery was nothing like equal to the amount of the loan, and, of course, policy of insurance, which probably would not have been required if the machinery had not been understood be conveyed, was worth nothing as security unless the property insured should be destroyed by fire.
About a year after this, the firm having failed, Braxton made a deed of trust to Little & Goolrich, conveying the same lot and also specifically the machinery, to secure ■some of his individual creditors; and, a few days after-wards, he and his partner Barry united in a deed to Ficklin and McCracken, conveying all their social assets to secure their social creditors. This deed conveys all the social assets in general terms, describing them in part, but not specially mentioning the machinery. If, however, the machinery belonged to the firm, I think the terms of the •deed are broad enough to cover it.
The controversy is between these social creditors under the last named deed, on the one side, and Shelton, the individual creditor of Braxton under the first deed, on the •other, and relates exclusively to the machinery aforesaid; the question being, whether the machinery was so annexed to the freehold copveyed to Conway, trustee, as to become • a part of it, and further, whether Conway and Shelton occupy the relation to the social creditors of bona fide purchasers.
*741 If there had been no partnership in this case, and Braxton had been sole owner of the machinery, as he was of the lot, and had annexed it himself, and the question was solely between Braxton as mortgagor and Shelton or his trustee, Conway, as mortgagee, there could be no doubt that, both upon principle and authority, the machinery would be regarded as a part of the factory building and would have passed to Conway under the deed conveying the lot on which- the building rested. The ancient rule, expressed in the maxim, quicquid plantatur solo, solo eedit —“ whatever is affixed to the soil belongs thereto”— would have applied in full force. This machinery was not only annexed to the freehold in the most substantial manner, but was essential to the uses and purposes to which the building was to be applied, and was in fact applied. The building was erected for the machinery and the machinery especially designed for and adapted to the building. The building would have been of comparatively little use or value without the machinery which was attached to it.
This case docs not differ essentially in its features from Green v. Phillips & others, 26 Gratt. 752, as to the character and uses of the machinery and the mode and extent of annexation, and upon the authority of that case, and numerous other cases, which need not be cited, the machinery would have passed as a fixture under Conway’s deed as against Braxton, the mortgagor, if he were the only one disputing the title.
But the social creditors of Braxton & Barry intervene, claiming that as to them, under the facts of this case, the machinery never was so annexed to the freehold as to become a part thereof. ■ They claim that Braxton & Barry as partners, were tenants under Barry, and that under the law determining fixtures between landlord and tenant, the machinery was never a part of the realty, and moreover, that it was expressly agreed between the partners, at the *742 commencement of their partnership and before any of the machinery was put up in the building, that it should be • considered and treated, and was so considered and treated by them, as partnership assets, and on both accounts that it never ceased to be personal property, and therefore did not pass under the deed to Conway.
The old rule, before referred to, has certainly been greatly relaxed in modern times in favor of tenants of a limited interest; but the general doctrine'on the subject need not be discussed in the present case, as the rights of the parties must be determined by the agreement made.
The legal effect of that agreement was to preserve the character of the machinery as personalty, at least ' as between the parties, although annexed in such a manner as otherwise to make it realty. The law would seem to be well settled that in annexing chattels, where, as in this case, they are not so incorporated as to render identification and severance without serious damage to the freehold impracticable, they may retain the nature of chattels, if the parties so agree. There seems to be no limitation concerning the kind of severable chattels which may be owned by one person upon another’s land. Campbell, J., in Crippen v. Morrison, 13 Mich. R. 23, 34. It was said by Martin, C. J., in the same case, that whatever may be the rule of the common law respecting fixtures, in the absence of any agreement of the parties, it is well settled at this day that the contract of the parties will fix the character and control the disposition of personal property, which, in the absence of a contract, would be held to be a fixture; in other words, “the parties interested may control the legal effect respecting such property by express agreement. See other case's cited in 1 Wait’s Actions and Defences, 372, §4. It has been recently declared by this court, (Judge Christian delivering the opinion), as a principle firmly settled by numerous decisions, that where a building is erected by one man upon the land of another, by his permission, upon *743 an agreement or understanding that it may be removed at the pleasure of the builder, it does not become a part of the real estate, but continues to be a personal chattel and - the property of the person who erected it. Andrews, Ordway & Green v. Auditor, &c., 28 Gratt. 115, 118, and cases there cited.
Such agreements may be valid and effectual between the parties, but how are the rights of third parties affected by them? A bona fide purchaser of the freehold, for example, or a mortgagee, who stands on the same footing ? There is a class of authorities, perhaps the larger class, which hold that such bona fide purchaser or mortgagee acquires no title to a chattel annexed by the owner or some other person by his consent to the land of another, under an agreement that the title to the chattel shall not pass to the owner of the freehold or only upon conditions, if in such case the chattel can be disannexed without serious injury to the freehold. These cases proceed upon the broad ground that the chattel so annexed does not cease to be a chattel by reason of the annexation, and does not, therefore, pass to a bona fide purchaser of the land. Many of them are cases of conditional sales. Such was the case of Godard v. Gould, 14 Barb. R. 662, relied upon by the learned judge in the court below in support of the decree now under review. Certain machinery was manufactured and set up by the plaintiffs in the mill of another, under an agreement that the plaintiffs should remain owners of the machinery until it was paid for. It was annexed to the mill in a very substantial manner, and could not be removed as a whole without cutting away the walls of the building, but could be taken .apart and removed without injury to the building. The owner of the mill sold and conveyed it to a bona fide purchaser, who claimed the machinery under the deed. It was held that the machinery did not, by the annexation, become part of the realty, so as to pass by the deed, but that it continued to be personal *744 ProPerV> and to belong to the plaintiffs, so long as the-purchase money remained unpaid. Strong, J., in deliver-the opinion of the court, concurred in by the other judges^ (Selden and Johnson), said “that the machinery being personal property, the grantors could .not convey a greater interest in it than they had. It is not material whether or not it would have passed by the deed without the special clause embracing fixtures and as a part of the land, but for the agreement that the plaintiffs should remain the owners; it was in either case personal property belonging to others, whose title the grantors could not transfer. Nor does the fact that the defendants are bonapurchasers in the conveyance make any difference. * * I am not aware of any principle upon which it could be held that the plaintiffs have lost their title.” Decided cases, recognizing the same principles, are numerous. See Mott v. Palmer, 1 N. Y. R. 564; Russell v. Richards, 10 Maine, 429; Dame v. Dame, 38 N. H. 429;-Gross v. Marston, 17 Ver. 533; Ford v. Cobb, 20 N. Y. 344; Tifft v. Horton, 53 N. Y. 377; Kinsey v. Bailey, 9 Hun. 452. See also what is said in Crippen v. Morrison, Mich. 23, 28, and cases cited in opinion of Campbell,
There is another class of cases which hold, that where-the chattel is annexed by the owner or with his consent,, under an agreement that the title shall not vest unless and until certain conditions are complied with, if the annexation is such as to present to a beholder the appearance of permanency and apparent title in the owner of the freehold, although the agreement may be effectual between the parties, the fixture will pass as realty under a conveyance of -the land to a bona fide purchaser or mortgagee without notice of the agreement. These cases would seem to be grounded on the principle of equitable estoppel.
The case of Davenport v. Shauts & others, 43 Verm. R. 546 (decided in 1871), was substantially this. Root sold *745 to Shauts & Co. certain machinery to be put up in their mill or factory, the sale being on condition that the machinery should remain the property of the vendor until paid for. Root knew or had reason to suppose that the machinery would be put up, and it was put up, in the mill, before it was paid for. It was substantially annexed, so that it would pass under a mortgage of the real estate. The greater portion of the purchase money for the machinery being unpaid, Shauts & Co. mortgaged the premises, the mortgagee having no notice of the agreement aforesaid between Root and Shauts & Co. It was held, that the equity of the mortgagee, without notice of the vendor’s claim and in reliance upon the vendee’s title being absolute, was paramount to that of the conditional vendor.
In delivering thejopiuion of the court,' Peck, J., said, a The defendant Root must have understood, when he sold the property to Shauts & Co. that they intended to put the property to use in advance of the payment of the price; and from the kind and nature of the property, he must have expected that in its use it necessarily must be annexed to the realty, substantially in the manner in which it was, and thereby became apparently parcel of the realty. What he knew or had reason to suppose, and did suppose, was to be done with the property, he must be taken to have consented to, as he did not object. Root, therefore, having, by implication at least, if not expressly, consented that the property might be incorporated with the realty of Shauts &. Co. in the manner it was, and they thereby become clothed with the apparent title as incident to their record title to the real estate, whereby the mortgagee was misled and induced to part with his money on the credit of the property, the equity of the mortgagee is paramount to that of the conditional vendor. Justice and equity, as well as sound policy, require this limit to the rights of a conditional vendor as between him and an innocent pur *746 chaser or mortgagee of real estate without notice, who advances his money on the faith of a perfect title.”
In Haven v. Emery, 33 N. H. 66, the plaintiffs had sold and delivered to a railroad company a quantity of iron with a stipulation that it should be laid on a designated portion of the road, and upon payment of a specified price, the rails should become the property of the company, but that, until such payment, they should remain the property of the plaintiffs. The rails were laid on the road as it had been agreed; and the greater portion of the purchase money for the rails being unpaid, the company gave a mortgage on the road. The bill, among other things, charged that the mortgagees, when they took their mortgage, had notice of the agreement aforesaid between the company and the vendors of the rails. The case was heard and decided on demurrer to the bill. Notice being admitted by the demurrer, it was held, that the agreement was good between the parties, and that the mortgage did not affect the title of the vendors of the rails.
Parley, C. J., in delivering the opinion of the court, adverting to the doctrine of the first class of cases herein-before cited, and especially Mott v. Palmer, supra, that a purchaser of land would be bound by an agreement of the seller, which gives to what would otherwise be part of the land the character of personal property, and vested the title to it in another, though the purchaser had no notice of the agreement, took occasion to say, “We are not yet prepared to acquiesce in such a doctrine. Primarily, and in the absence of notice to the contrary, the purchaser would seem to have a right to suppose that he was buying with all the incidents and appurtenances which the law, as a general rule, annexed to his purchase; and we should hesitate before we held that he could be affected by á private agreement, not brought to his knowledge, which changed the natural and legal character of the property. But if the purchaser buy with notice of the agreement, and of the party’s rights under it, he will be bound by it.”
*747 Hurt v. Bay State Iron Co., 97 Mass. 279, [decided in 1867,] is very much the case of Haven v. Emery, supra. There, too, iron had been sold and delivered to a railroad-company on the same condition as in Haven v. Emery, the iron laid, and, before it was paid for, a mortgage given by the company. In the opinion of the court by Foster, J., it is said, “ There can be no doubt that the rails, when laid upon the road bed and fastened there so that engines and cars could pass over them, would have become annexed to the realty and ceased to be personalty, in the absence of any agreement changing the ordinary rule of law.” After citing cases from New Hampshire to the effect that rails so laid would be regarded as still the personal property of the vendors, as between the vendor and the railroad company^ but not as to mortgagees without notice, and like cases in Massachusetts, and regarding the laying of the rails on the track as making them realty, he adds, “ Upon the question whether the character of property can be changed from realty to personalty as against a bona fide purchaser without notice, there is not entire harmony of the authorities; but we regard the better opinion as being that such a purchaser must have notice of the agreement before he acquires title, or he will be entitled to claim and hold everything which appears to be and by its ordinary nature is a part of the realty. Elwes v. Mawe, 3 East. 38; 2 Smith’s Lead. Cas. 228, and notes. To hold otherwise would contravene the policy of the laws requiring conveyances of interests in real estate to be recorded, seriously endanger the rights of purchasers, afford opportunities for frauds, and introduce uncertainty and confusion in land titles.” See also Breenan v. Whitaker, 15 Ohio St. 446; Ewell on Fixtures, 319.
This author, adverting to the rule supported by the first class of cases above cited, observes that it has been often disapproved; 'and that the sounder rule, and one more in accordance with the policy of the recording laws of this *748 country, is to require actual service or notice of a binding agreement to sever in order to deprive the purchaser or a -creditor levying upon the land and fixtures of the right to-the fixtures or appurtenances to the freehold.
In the view I take of the case in judgment, it is not material which of the two classes of cases referred to propounds the true doctrine. If the first, it is clear that the machinery, being regarded personalty as to all parties, did not pass under the deed to Conway. If the second, he and the beneficiary (Shelton) cannot be considered as in the attitude of bona fide purchasers, if they had notice of the agreement between Braxton and Barry, that the machinery was partnership assets; and I am of opinion that. ' they did have such notice. They had actual notice of the partnership. That is admitted. They, moreover, had knowledge that the partners were in possession of the factory and machinery annexed and were operating the same. This possession was open, continuous, exclusive, and unequivocal. It was, in law, notice of the interest which the-partners had in the property. It was sufficient to put a prudent man, dealing in relation to the property, on enquiry. It made enquiry a duty, which, duly pursued, would have led to knowledge of the existing facts as to-the title and the rights of the occupants in respect thereto. Indeed, Conway had knowledge during the treaty for the loan, and before it was consummated, that Braxton had. not then acquired the legal title to the lot. This was an additional circumstance to stimulate enquiry; and, it appears further, that the title to the machinery was a matter brought to the attention of Conway during the negotiation, as the record abundantly shows. Whether Braxton volunteered to represent that he was the owner of the machinery, or whether his representations were in response to enquiries addressed to him by Conway, does not appear, nor is it very material. Neither Conway nor Shelton could be acquitted of want of due diligence without ex *749 tending their enquiries to Barry. If they had enquired of him, as in law they were bound to do, they would have learned the true state of the title to the machinery, and - they must be taken to have the knowledge which enquiry, imposed as a legal duty, duly made would have furnished. They had the means of knowledge, and the law imposed the duty to use these means; and means of knowledge, with the duty of using these means, is, in equity, equivalent to knowledge itself. Cordova v. Hood, 17 Wall. 1; Long & others v. Weller’s ex’or & others, 29 Gratt. 347, and notes. See also Le Neve v. Le Neve, 2 Lead. Cas. Eq. (4th ed.), Part 1, top pp. 180-189, where the question of notice by possession is discussed, and numerous cases are referred to and commented on.
I shall refer more particularly to only one case, Kerr & others v. Kingsbury & others, 17 Amer. Law Reg. N. S. 638, decided by the supreme court of Michigan in 1878. That case, which was cited in argument by the learned counsel for the appellees, very closely resembles the one now before us.
Kingsbury, being the owner of certain premises in the city of Grand Rapids, leased them for a number of years to the firm of Long & Bennett, who took possession and ■occupied them for the purposes of a coal and wood yard. The lease contained a provision allowing the lessees thirty days, on its termination, for the removal of the buildings. There were two other leases, but they need not be remarked upon, as they seem to have no bearing on the question of notice, which was raised in the case. During the term, Kingsbury purchased of Long his interest in the copartnership of Long & 'Bennett, and assumed his place in the business, which was thereafter carried on in the name of Kingsbury & Bennett. Buildings having been erected on the premises by the tenants^ Kingsbury gave to Kerr a mortgage on the premises, and the firm, having afterwards failed, made an assignment for the benefit of their credit *750 ors# The buildings were claimed by Kingsbury’s mort- ” n i gagee as having passed as realty under the mortgage, and the assignee of the firm as tenants’ fixtures reserved unc)er the lease. One of the questions in the case was, whether Kerr, the mortgagee, at the time he took the real es*ate mortgage, had notice that rights in the buildings Were claimed by Kingsbury & Bennett as tenants, and the decision of that question depended solely on the solution of the further question, whether the possession of the tenants was notice or not.
Judge Cooley delivered the opinion of the court, and disposed of the question as follows:
“ It is true,” said he, “ as a generel rule, that the possession of a grantor or mortgagor is no notice to his grantee or mortgagee that he claims any rights in the premises as against the conveyance he gives : Bloomer v. Henderson, 8 Mich. 395; Dawson v. Danbury Bank, 15 Id. 489. But here Bennett, as well as Kingsbury, was in possession, and Bennett’s rights could not be taken away by any act of Kingsbury’s. As to Bennett, the buildings remained chattels, and it was the duty of Kerr to take notice of his rights. If he had done so, and made the necessary enquiries, he would have ascertained that the buildings were personalty; for they could not be realty as to one interest and personalty as to another: Adams v. Lee, 31 Mich. 440.”
Upon the whole matter, I am of opinion that the circuit court did not err in holding that the machinery was first liable to the social creditors of Braxton & Barry under the deed made by the firm to secure these creditors, and that the decrees appealed from should be affirmed.
Moncure, P., and Anderson, J., concurred in the opinion of Christian, J.
Staples, J., concurred in the opinion of Burks, J.
*751 The decree was as follows:
This day came again the parties, by their counsel, and the court, having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the decree of the circuit court of Fredericksburg is erroneous. It is therefore decreed and ordered that the said decree of the said circuit court be reversed and annulled, and that the appellant recover against the appellees his costs by him expended in the prosecution of his appeal and supersedeas here. And this court, now proceeding to enter such decree as the said circuit court ought to have entered, doth adjudge, order and decree that the net proceeds of the sale made by the said W. P. Conway, trustee, as shown by his report in this cause, be paid over to the appellant, the said John C. Shelton, this court being of opinion that the whole fund in the hands of the said trustee is liable, first to the debt secured to the said John C. Shelton by the deed of trust executed by the said Carter M. Braxton and wife on the 14th April, 1874, to the said W. P. Conway, trustee, to secure said debt.
Decree reversed.