# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## Monarch Laundry and Others v. Westbrook.

### March 11, 1909.

1. Sales—*Reservation of Title—Recordation—Code, Section 2462.*—A reservation of title to engines, boilers and machinery which a vendor, by a written contact, sells to a vendee, and installs for use in a plant for the conduct of a laundry business is valid as against subsequent purchasers of the plant from the vendee, or mortgagees thereof, where it appears that the contract reserving the title was duly docketed in accordance with the provisions of section 2462 of the Code prior to the sale or mortgage. The docketing or recordation of such a contract constitutes constructive notice thereof to third persons. Such was the object of the statute.

2. Fixtures—*Purchasers—Notice.*—A vendee or mortgagee of realty, with notice of the rights of third parties in fixtures, takes subject such rights.

3. Sales—*Reservation of Title—Code, Section 2462—"Goods and Chattels" "Movable" Property.*—The term "goods and chattels" used in section 2462 of the Code, relating to the reservation of title to personal property, is restricted to "visible, tangible and movable" personal property as distinguished from choses in action, but is not restricted to movable personal property of the same class to which a slave belonged. "Movable" means "that which may be lifted, carried. drawn, turned or conveyed, or in any way made to change its place or position."

4. Fixtures—*Reservation of Title—Engines and Boilers.*—Engines, boilers and machinery for a laundry are movable personal property, and, if the terms of the statute (Code, section 2462) are complied with, the title thereto may be retained by the vendor, although installed as part of the plant.

5. Sale of Personal Property—*Conditional Sale—Insufficient Description of Property.*—A contract for the sale of specific personal property, reserving title thereto, which further provides for furnishing such "additional shafting, piping, connections, etc.,

as may be required to complete the said plant as to the motive power of the same," is too vague and indefinite in its description of the additional shafting, etc., to be supplied, to enable a stranger to indentify the property with any degree of accuracy, and hence the title sought to be reserved cannot be protected as against a subsequent purchaser for value and without other notice thereof.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk in a proceeding under section 2462 of the Code. Judgment for the plaintiff. Defendants assign error.

*Affirmed.*

The opinion states the case.

*Thos. W. Shelton,* for the plaintiffs in error.

*Robert M. Hughes, Jr.,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

Appellants, in the oral argument, waived their assignments of error other than those which present the question, whether a reservation of title to personal property in the shape of engines, boilers and machinery, which a vendor by written contract sells to a vendee, and installs for use in a plant for the conduct of a laundry business, the contract reserving title having been duly docketed in accordance with section 2462 of the Code of Virginia, is valid as against purchasers from the vendee (mortgagees of the realty), who purchased, as in this case, after the engine and boiler with its attachments and equipment had been installed in the laundry plant.

By the agreed statement of facts, the engine, boiler and machinery in question were installed in vendee's plant, and the contract reserving title to same was docketed as required by statute prior to the execution and recordation of certain deeds of trust afterwards given upon the vendee's building and con-

tents, and upon which deeds of trust the rights, if any, of the appellants attacking the validity of the title reservation depend.

In certain particulars, appellants and appellee differ in their view of the evidence, the appellants contending that the boiler, engine and machinery were so installed in the building of the laundry company as to make them a part of the realty, while appellee contends that the engine, boiler and their equipment, even, from a physical standpoint, and independent of other controlling questions, did not become a part of the realty, but were so installed as to be removable.

We consider it unnecessary to review at length the history, purpose and policy of the statute—sec. 3462 of the Code, *supra.* Suffice it to say, that previous to this statute, the law of the State was, that where a vendor agreed to sell personal property for a price to be paid at a future time, and delivered the possession, but expressly retained title to the property until payment, such an agreement constituted a conditional sale; and though by parol or by an unrecorded instrument, such reservation was valid as against vendees, creditors and subsequent purchasers with or without notice. Whereupon, the statute, now sec. 2462, *supra,* restricted that doctrine for the protection of innocent third parties by providing that such reservation of title should be void as to them unless recorded in such a way as to give notice.

The statute in its original form, as enacted at the legislative session of 1883-4—Acts of 1883-4, p. 27—provided that the notice should be given "from the time the said writing is duly admitted to record," etc. By the present statute, *supra,* engrafted in the Code of 1887, there is substituted for the requirement of the previous statute that the instrument itself be recorded as deeds of conveyance are required to be recorded, the requirement only that a memorandum of the contract containing certain information specifically prescribed should be docketed by the clerk of the court of the county or corporation, in whose office deeds and other writings were required to be recorded; and

further provides, that "the docketing and indexing of such memorandum of such contract as provided for shall have the same effect as to creditors of and purchasers for value without notice from the vendee as if said contract were recorded according to the provisions of chap. 109 of the Code of Virginia."

Section 2465 of the same chapter of the Code, under the caption "contracts, deeds, etc., that are void as to creditors and purchasers unless recorded," provides: "Every such contract in writing and every deed conveying any such estate or term, and every deed of gift, or deed of trust, or mortgage conveying real estate or goods and chattels, and every bill of sale or contract for the sale of goods and chattels * * * shall be void as to subsequent purchasers for valuable consideration without notice, and creditors, until and except from the time that it is duly admitted to record in the county or corporation wherein the property embraced in such contract, deed or bill of sale may be," etc.

This whole chapter of the Code treats the matter of the recordation of documents as to realty and personalty in one category and provides for their recordation, and in the light of the entire chapter there is no room for doubt that it was intended by the legislature that the docketing or recordation of a contract of sale of personal property, reserving title thereto until the purchase money is fully paid, as provided by sec. 2462 of the Code should constitute notice to third parties.

But it is argued for appellants that while this view of the statute may be correct and appellee has complied with its terms, such machinery as is involved in this controversy was never intended to come within the purview of the statute; that while this machinery was personal property when sold, it became, as a part of the plant of the laundry company, real estate, and by its nature it was intended to remain where placed as a part of a general scheme; and that, as said in *Kirkland* v. *Brune,* 31 Gratt. 127: "The act manifestly refers to such property and such 'goods and chattels' as are visible, tangible and movable."

It is very true that the statute refers to "such goods and chattels as are visible, tangible and removable," but that the engine, boiler, etc., here in question, because put into and made to form a part, however important, of a laundry plant, ceased to be visible, tangible and movable personal property within the purview of the statute in a *non sequitur*.

In *Kirkland* v. *Brune, supra,* and *Bank* v. *Holland,* 99 Va. 505, 39 S. E. 126, 86 Am. St. Rep. 898, 55 L. R. A. 155, relied on for appellants, the court was dealing in the one case with choses in action, "invisible and intangible," and in the other with a gift of like property, while here the subject of the controversy is visible, tangible, movable, personal chattels, such as are objects of the senses, deliverable in specie.   We are unable to appreciate the force of the argument of the learned counsel for appellants, that under the review of the history of the statute and the reasoning of the opinion in *Bank* v. *Holland, supra,* the doctrine of *ejusdem generis* applies to this case, and the terms of the statute are to be confined to "movable personal property of the same class or kind of chattels to which a slave belonged," *i. e.,* such as could and would likely be moved from county to county and without the vendor finding it out within a year, referring to sec. 2414 of the Code.   But if it could be conceded that this view is correct, it would not avail appellants in this case.   Besides, being a matter of common knowledge that so-called stationary engines and boilers of the class involved here are movable, and are frequently removed from place to place, the evidence, as we shall presently see, is conclusive on that point.

The definition of the word "movable" is, "that which may be lifted, carried, drawn, turned or conveyed, or in any way made to change place or position."

The assertion is made that the machinery furnished by appellee constitutes appellant's laundry plant, the inference being that the security of the subsequent creditors secured on the realty would be destroyed; but there is nothing in the record

warranting this assertion or inference. On the contrary, from the agreed statement of facts it appears that the value of the land is $4,000, the cost of the building independent of the machinery, $10,803.00; the cost of machinery in the building, $10,050.00, of which latter less that $4,000 thereof represents the machinery, etc., furnished by appellee, so that his machinery bears the same proportion to the total security of the subsequent deed of trust creditors as $4,000 bears to $24,853; while the aggregate of these subsequent deed of trust debts is only $13,900.

It is very true that it was said in *Morotock Ins. Co.* v. *Rodefer,* 92 Va. 752, 24 S. E. 395, 53 Am. St. Rep. 846: "In this age of marvelous development of industries and multiplication of manufactures, it is a matter of common knowledge that it is the machinery and apparatus necessary for the production of the particular manufacture which form the principal part of the manufactory, and that the building in which they are placed and to which they are affixed serves but to inclose and protect them. They mainly constitute the manufactory of which the building is generally only an incident." But in that case (an action on a policy of fire insurance) the opinion was dealing with the question as to what constitutes *fixtures,* and after quoting from *Shelton* v. *Ficklin, Trustee,* 32 Gratt. 727, the opinion says: "Consequently the court cannot know merely from such general descriptive terms as 'all engines, machines, tools, appliances, connections, attachments, and contrivances of every kind,' when used in connection with a manufactory, whether they constitute in any particular case, like the one under consideration, what the law denominates *fixtures,* or retain their character as personalty. This can only be established by evidence."

In this case the evidence shows that the machinery, etc., furnished by appellee was installed by himself, who constructed the foundations therefor; that not only the machinery itself, but the foundations could be removed, and with the view of their possible removal. Appellee's witness, Corey, testifies that

the boiler was of such a size that it could be taken through the rear door of the building without injury to the building; that the walls built for the boiler were separate from the walls of the building; that the smoke-stack could be removed without injury to the roof of the building, and that the concrete put down by appellee incidental to the installation of the machinery would not mix with the other concrete in the building when superimposed thereon, and could be easily removed without affecting the other concrete. The witness was asked: "Will you state whether or not this machinery, as installed by Mr. Westbrook, could be taken out of the Monarch Laundry plant, without destroying the building or the floor?" and his answer was: "It can be removed without disturbing that part of the building. The floors can be left in as good shape as though the engines were not there."

Another witness, H. L. Key, who constructed the foundations for the machinery installed by appellee, corroborates the statements made by the witness, Corey, and this evidence is practically not contradicted.

It is thus shown that the property in question has never lost its character as personalty, and when installed the rights of the vendor and vendee became established, and obviously it would be inequitable and unjust to hold that the vendee could affect the rights of the vendor thus established by any subsequent action upon its part.

It would be impossible within reasonable limits of an opinion to review separately the cases relied on for appellants, however easily they may be distinguished from this case. Among those cases is *Haskins, Wood, &c. Co.* v. *The Cleveland Ship-building Co.,* 94 Va. 439, 26 S. E. 878, citing *Green* v. *Phillips,* 26 Gratt. 752, 21 Am. Rep. 323; *Shelton* v. *Ficklin,* 32 Gratt. 727; *Morotock Ins. Co.* v. *Rodefer,* 92 Va. 747, 24 S. E. 393, 53 Am. St. Rep. 846. The two last named cases we have already referred to, and as to the first it need only be said that as in *Shelton* v. *Ficklin,* there was no notice to the mortgagees of

a secret interest in the property, if any in fact existed, and no understanding or intention among the parties that the property was to remain personalty.

In *Haskins, &c. Co. v. Cleveland, &c. Co., supra,* the controversy was between a creditor of the corporation secured by a deed of trust subsequent to the contraction of the debt secured and a mechanic's lien creditor, and the court merely held that the property therein involved was a part of the realty and subject to a mechanic's lien, and there was no question involved of retention of title to chattels pursuant to the intention of the parties, as contemplated by the statute, section 2462 of the Code, *supra.*

As observed, the statute which makes the docketing or recordation of a written contract—which terms are used interchangeably under the purposes of the statutes (*Callahan* v. *Young,* 90 Va. 574, 19 S. E. 163)—notice to third parties; therefore, appellee's rights rest upon the principle of law established by a long line of authorities, that a vendee or mortgagee of the realty, with notice of the rights of third parties in fixtures, takes subject thereto, and some of them go to the extent of upholding the principle, even if the property became part of the realty from a physical standpoint. Among the cases referred to are, *Sword* v. *Low,* 122 Ill. 487, 13 N. E. 826; *Wilgus* v. *Gettings,* 21 Iowa, 177; *Northern Cent. R. Co.* v. *Canton Co.,* 30 Md. 347; *Warner* v. *Kenning,* 25 Minn. 173; *Priestly* v. *Johnson,* 67 Mo. 632.

In the first cited case, the court considering the question when fixtures would or would not become part of the realty and lose their identity as personalty, held that even in cases of doubt the intention of the parties must control. And in *Northern Cent. Ry. Co.* v. *Canton Co., supra,* the opinion says: "Thus it is not so much the character of the structure as the circumstances under which it is erected that will determine whether it passes with the realty or is to be treated as personal property."

The reasoning of this line of cases is that if the agreement of

the parties and the purposes of justice require that the title to both should be kept separate, the court's will so regard them, provided always that when the title to the personalty is retained pursuant to statutory provision, the notice to third parties required by the statute has been given, as is conceded was done in the case at bar.   See also Minor's Real Prop. sec. 27, p. 35.

If the contentions of appellants were sustained, the entire purpose and policy of the statute would be defeated, since its very object is to give dealers like appellee a lien on the property of the kind furnished by him and thereby establish a means of credit to facilitate the conduct of dealing and methods of trade, such a policy being regarded as essential under the conditions growing out of the marvelous development of industries and the multiplication of manufacturers, spoken of in *Morotock Ins. Co. v. Rodefer, supra.*

The decree complained of ordered the laundry company to deliver to appellee or pay him the ascertained value ($3,335.07) of the machinery and articles listed in his itemized bill in evidence, as of date or dates prior to May 4, 1907, the date of the contract between appellee and the laundry company, but refused appellee an order for that portion of the equipment, of the value of $308.14, furnished after the date of the contract, May 4, 1907, shown in the schedule in evidence as furnished under this clause of the contract: "This agreement further contemplates furnishing the additional shafting, piping, connections, etc., as may be required to complete the said plant as to the motive power of same."   The court refused to give a decree for the articles furnished under this clause of the contract, for the reason that they were not sufficiently described, and this ruling is assigned as error by appellee.

In *Williamson* v. *Payne,* 103 Va. 551, 49 S. E. 660, relied on by appellee, it was held that "a deed of trust on personal property gives a sufficiently definite description of the property granted when it enables a stranger to identify the property by the aid of proper inquiry such as the instrument indicates and

directs." But this ruling does not help appellee as the contract with respect to the "additional shafting, piping, connections, etc.," to be supplied after the date of the contract is altogether too vague and indefinite to enable a stranger to identify the property with any degree of accuracy; and, therefore, we could not say that the lower court erred in so holding.

We are of opinion that the decree appealed from is right and should be affirmed.

*Affirmed.*