FISCH v. STEINGOLD (two cases).
Nos. 3862, 3876.

Circuit Court of Appeals, Fourth Circuit.
Oct. 8, 1935.

Philip H. Burcher, of Newport News, Va., for appellant.

Vandeventer & Black, of Norfolk, Va. (Russell T. Bradford, of Norfolk, Va., on the brief), for appellee.

Before SOPER, Circuit Judge, and WATKINS and CHESNUT, District Judges.

SOPER, Circuit Judge.

The petitioner in this case in the District Court laid claim to an electric refrigerator which he had sold the bankrupt under a conditional sales agreement whereby title in the goods, until fully paid for, was reserved in the seller. The trustee in bankruptcy resisted the claim on the ground that the sales agreement, although registered, did not show the total amount due by the purchaser, and consequently did not give rise to a claim or lien upon the goods valid as to the trustee under the statutes of Virginia where the sale took place. The District Court upheld the trustee and denied the relief prayed.

The sales agreement was executed on November 12 and docketed on November 16, 1931, in the clerk's office of the corporation court of the city of Norfolk, in which city the goods were sold and delivered to the bankrupt. The agreement showed that the total purchase price was $1,870.15, of which the purchaser paid $246.15 in cash, and agreed to pay in weekly installments the balance of $1,-624, which was evidenced by a trade ac-

ceptance. When the petition was filed on November 13, 1934, after the bankruptcy of the purchaser, the payments were in arrears, and there remained an overdue indebtedness of $608, and the seller therefore claimed the right to take possession of the goods, as provided in the agreement in the event of the purchaser's default.

The agreement, however, also provided as follows: "The holder of said acceptance may, at the expense of the purchaser, provide insurance covering the goods against loss or damage from any cause. Any money paid out or expense incurred by the seller or holder of said acceptance in his or its judgment necessary for the protection of his or its interest hereunder, shall be due as a part of this agreement and so recoverable."

The record does not show that the seller in fact took out any insurance on the goods, but the contention is nevertheless made that the quoted clause introduced an element of uncertainty as to the amount of the indebtedness, and the document therefore did not show the amount due as required by section 5189 of the Code of Virginia of 1930 as follows: "Every sale, or contract for the sale of goods and chattels, wherein the title thereto, or a lien thereon, is reserved, until the same be paid for * * * shall * * * be void as to creditors of the vendee who acquire a lien upon the goods * * * unless such sale or contract be evidenced by writing, signed by the vendor and the vendee, setting forth the date thereof, the amount due, when and how payable, a brief description of the goods and chattels, and the terms of the reservation or condition; and unless said writing is filed for docketing with the clerk of the county or corporation, where deeds are admitted to record, * * * in which said goods and chattels may be."

Since the goods were in the possession of the bankrupt, when the proceedings in bankruptcy were instituted, the trustee occupied the position of a creditor who had acquired a lien upon the goods before the seller's petition was filed, National Bankruptcy Act, § 47 (a) (2), 11 USCA § 75 (a) (2); Groner v. Babcock Printing Press Mfg. Co. (C. C. A.) 267 F. 822, and the trustee's lien was therefore superior to the claim of the seller, unless the sales agreement was

docketed as required by law. We have heretofore had occasion to consider the Virginia statute in bankruptcy cases. In Groner v. Babcock Printing Press Mfg. Co., supra, it was held that a so-called lease agreement of a printing press did not comply with the requirement of the statute that the writing set forth when the indebtedness was payable, since the notes evidencing the deferred payments were to run from the date, not fixed by the contract, when the press should be set up in good running order on the premises of the purchaser. Again in Tokheim Oil Tank & Pump Co. v. Fentress (C. C. A.) 33 F.(2d) 730, 65 A. L. R. 710, a recorded sales agreement was held to be outside the protection of the statute, since it provided that the deferred monthly payments should begin 30 days from the date of shipment, but failed to specify that date. See, also, Tilton v. H. M. Wade Mfg. Co. (C. C. A.) 2 F.(2d) 358, 359; In re Lowry (C. I. T. Corp. v. Machen), 40 F.(2d) 321, 323 (C. C. A.). In these decisions, we followed, as we were bound to do, the interpretation placed upon the statute by the Supreme Court of Appeals of Virginia in National Cash Register Co. v. Burrow, 110 Va. 785, 67 S. E. 370; National Cash Register Co. v. Norfolk City Realty Co., 110 Va. 791, 67 S. E. 372; Newcomb v. Guthrie, 145 Va. 627, 134 S. E. 585. See, also, Monarch Laundry v. Westbrook, 109 Va. 382, 63 S. E. 1070; Liquid Carbonic Co. v. Whitehead, 115 Va. 586, 80 S. E. 104.

The precise point here under consideration has not been decided in Virginia, for in the cases to which we have been referred, the attack upon the validity of the conditional sales agreement was based upon some uncertainty in the description of the goods, or in the amount remaining due upon the purchase price of the goods, or in the time when it was payable. There is no uncertainty in these particulars in the pending case, for the description of the goods in the agreement was specific and clear, and the amount of the total purchase price, $1,870.15, and the balance due thereon, $1,624, evidenced by the trade acceptance, was definitely stated in the following paragraph: "The purchaser, in order to further secure to the holder thereof, the payment of said acceptance or any other charges hereunder agrees to deposit with said holder, regular, periodical sums of money, aggregating the amount of said acceptance and any other charges hereunder in accordance with the following schedule, and such payments may be first applied to any other charges hereunder before being applied on said acceptance; $15.61 on Monday of each week for 103 weeks beginning Nov. 16th, 1931, and a final payment of $16.17 at maturity * * *."

No other description of the "other charges" mentioned in the paragraph appears in the agreement, but the term doubtless should be read with the provision above set out, which authorizes the holder of the acceptance to insure the goods at the expense of the purchaser and provides that any expenses incurred by the seller or holder of the acceptance in his judgment necessary for the protection of his interest shall be due as part of the agreement. The contention of the trustee is that when the whole document is examined, it is impossible to say whether the balance due is $1,624 or a larger sum including such expenses as the seller may have incurred in the protection of his interest in the goods; that the right of the seller or the holder of the acceptance to incur the additional expense being unrestricted as to time, renders uncertain the amount due and payable at the expiration of the installment periods; and, since it is the obvious intent of the agreement to secure the additional expense as well as the purchase price by a lien upon the goods, the writing does not disclose the amount due by the purchaser so as to enable the clerk of the court to show this particular on his docket as required by the act. Moreover, it is said that it is immaterial whether insurance or other costs were actually incurred or not, the material fact being the right to create an additional indebtedness secured by a lien on the property, with the result that one who should examine the registry could not ascertain the extent of the claim.

This argument would not be without weight, if it should appear from the facts in the record that additional expenses of an uncertain amount had actually been incurred. Such, however, is not the situation with which we have to deal. The agreement shows quite the contrary, for although there is a reference in the last-quoted paragraph of the contract to "oth-

er charges," the total weekly payments, which the purchaser agrees to make, amount in the aggregate only to the balance due on the purchase price, and no provision is made for any additional sum. It is a necessary conclusion that the agreement sets out definitely the total indebtedness existing at the time of its execution, so that when these particulars were docketed, the public records disclosed the information required by the act.

Furthermore, when the whole record in the case outside the agreement is examined, nothing appears to show that additional expense was incurred at any time, or that the purchaser owes anything save the unpaid balance of the purchase price of the goods. Under these circumstances, we hold, in the absence of a specific ruling by the state court, that the sales agreement was registerable under the Virginia statute. Full and definite information of the only actual indebtedness was given to the public, which was in no way embarrassed or misled to its detriment by the bare right of the seller, never exercised, to preserve the security at the purchaser's expense. It may be added that provisions in contracts of conditional sale relating to insurance at the purchaser's expense are quite common, and it is well established that such provisions are in harmony with the purpose of the contracts to retain title in the goods in the vendor until paid for. Bailey v. Baker Ice Machine Co., 239 U. S. 268, 273, 36 S. Ct. 50, 60 L. Ed. 275.

It is suggested by the appellant that even if money should be spent for insurance after the execution of the contract, the lien on the goods would not be entirely lost, but would be valid to the extent of the indebtedness disclosed by the registry. This view finds some support in the decision in Monarch Laundry v. Westbrook, 109 Va. 382, 63 S. E. 1070, 1073, wherein an attack was made upon the validity of the lien under a contract which purported to cover not only property definitely described, but also "additional shafting, piping, connections, etc." to be later supplied; and it was held that although description of the additional goods was "too vague and indefinite to enable a stranger to identify the prop-

erty with any degree of accuracy," nevertheless the contract was enforceable as to the property properly described. This point, however, is not before us, and need not be decided.

Our attention has been called to the somewhat analogous situation which exists when the courts are called upon to decide whether a promissory note is negotiable which is secured by a mortgage containing an agreement on the part of the maker of the note to pay taxes, assessments, and insurance premiums. In some cases where such a provision is included in the note itself, or if included in the mortgage, must be read into the note, it has been held that the instrument lacks that certainty essential to negotiable paper. These rulings, it is urged, require the conclusion in this case that the amount of the debt is too uncertain to justify registration; but we think that there is no real uncertainty of amount in the case at bar. Moreover, there is a marked tendency in the line of cases cited to distinguish between the provisions in the mortgage which relate only to the security and those which relate to the debt. There are many decisions which hold that the negotiability of a note is not destroyed by a provision for the payment of taxes or insurance where this provision is contained only in the accompanying mortgage and is not imported into the note. See the authorities in the note in 45 A. L. R. 1075, 1080, 1081, 1090, 1092. This distinction is of significance in respect to the pending case, although the provision as to insurance and other expenses is found in the same writing as the terms which fix the purchase price and the balance due thereon. The words of the Virginia statute refer primarily to the debt arising from the purchase price of the goods, and if the statute is satisfied in this respect, no good purpose requires the loss of the seller's lien simply because he has reserved, but has not exercised, the right to protect his security at the expense of the purchaser.

The appeal in No. 3862 to superintend and revise is dismissed. The decree of the court in No. 3876 is reversed.

Case No. 3862, dismissed.

Case No. 3876, reversed.