PERRY McLAUGHLIN

*v.*

LORIMER JOHNSON.

1. FIXTURES—*what will be considered as—so as to pass by deed of the freehold.* Rails belonging to a fence, or hauled on to the premises with the intention of erecting a fence, or timber for a building, although not erected, but lying loose around the lands, and in no wise attached to the freehold, constitute a part of the realty, and will pass by a deed of the same, as appurtenances.

2. SAME. And when the removal of the rails formerly in fence was but a temporary severance of them from the realty, they still remaining upon the land, a sale of the land passes the title to the rails equally with the premises.

3. AGENCY—*husband and wife.* Where a wife, in the absence of her husband, loaned temporarily to a neighbor, certain rails belonging to a fence on the farm in which she was in possession, such act will not be considered as the exercise of an unwarrantable power. Nor will the assent by the agent of the owner of premises, to such act, be regarded as a violation of his duty, it involving no waste or destruction of the premises.

4. EVIDENCE—*concerning fixtures on estate conveyed—parol proof of inadmissible.* Parol proof, to show what fixtures on the estate at the time of its conveyance, passed by the deed, is inadmissible. The deed must settle that question.

APPEAL from the Circuit Court of Mercer county; the Hon. A. A. SMITH, Judge, presiding.

The facts in this case are fully stated in the opinion.

Messrs. J. R. & I. N. BASSETT, for the appellant.

Messrs. FROST & TUNNICLIFF, for the appellee.

Mr. Chief Justice Breese delivered the opinion of the Court:

This action was originally commenced before a justice of the peace of Mercer county, by Perry McLaughlin against Lorimer Johnson, and taken by appeal to the Circuit Court, where there was a verdict and judgment for the defendant.

To reverse this judgment the plaintiff has brought the case here by appeal, and makes his principal point on the instructions.

The record shows, substantially, this case; one Arnold, being the owner of a quarter section of land in Mercer county, sold, in 1861, the southeast forty to the plaintiff, and put him in possession. Before the sale, Arnold had enclosed the east eighty by fences on the south, east, north and west, and supposed he had, as he intended, placed the west string of fence on the west line of that eighty, making it a division line between the east and west eighty, but he afterwards ascertained by measurement, that the west fence was one or two rods off the west line, thus encroaching on the west eighty. The west eighty was not enclosed.

In January, 1864, Arnold sold to the defendant the remainder of the quarter section, being one hundred and twenty acres.

The plaintiff went into possession of this forty and of the fences enclosing it, until the spring of 1865, when the west line was removed, and this is the way in which it was removed: Plaintiff being absent in the army, early in the spring of 1865, defendant, by permission of plaintiff's wife, took the rails and put them up on the west line of the west eighty; this loaning was ratified by the plaintiff's brother, who was the legally constituted agent of the plaintiff to manage and take care of the farm in his absence. On the return of the plaintiff from the army, he conveyed this southeast forty to the defendant, and soon after demanded these rails of him, when defendant replied that he had paid for all the rails he got of plaintiff's wife. The plaintiff insisted he should return the rails, and the defendant contended he bought the rails when he bought the land.

The question is, did these rails, having once belonged, if that fact is admitted, to the west line of this forty, and the forty was sold and conveyed by the plaintiff to the defendant, after they had been removed by the defendant, pass to the defendant by that sale?

We must infer from the proof of the demand made by the plaintiff on the defendant for the rails "he had borrowed," that in the opinion of the plaintiff, at least, the rails had been but temporarily severed from the land, if not, why should he demand a return of them?

Suppose the defendant had returned them, and they were lying scattered about on the land when he purchased the land, would they not have passed with the land? This question has been answered by this court in several analagous cases. In *Palmer* v. *Forbes et al.*, 23 Ill. 301, it was held that the rolling stock, rails, ties, chains and spikes and all other material brought upon the ground of a railroad company incumbered by a mortgage, and designed to be attached to the realty, should be considered as a part of the realty and incumbered by the mortgage as such; and this, the court say, is not departing from the common law rule, for by that rule it is not necessary, in all cases, that things should be actually affixed to the freehold in order to constitute a part of it for the purpose of transfer and sale. The court illustrate, by the case of mill stones, which are constantly being taken up and dressed; when up, they are as much a part of the mill as when in their beds, and would pass by a deed or mortgage of the mill if they had been in fact detached for six months. Again the court said, it is a familiar principle, that rails hauled on to the land designed to be laid into a fence, or timber for a building, although not yet erected, but lying around loose and in no way attached to the soil, are treated as a part of the realty and pass with the land as appurtenances.

We think the proof is quite conclusive that the removal of the rails was but a temporary severance of them from the

realty, and on the sale of the land to the defendant, who had borrowed them before the sale and while they were upon the land, passed to him with the land.

Much has been said about the want of authority in plaintiff's wife to permit this removal, but be that as it may, the defendant did remove them and afterwards purchased the land to which they belonged. We infer from the whole case, that the forty plaintiff purchased of Arnold had no fence on its north line, and that the fence of the eighty was exterior to both that and the northeast forty, and when defendant purchased this, with the west eighty, he removed so much of the string of fence as made the west line of the northeast forty on to the west line of the west eighty, and by so doing left this remnant of the fence standing by itself with no continuation north. There were only about sixty-five rods of it remaining, so that some one must have removed fifteen rods of it, leaving that remainder wholly useless as an enclosure. When it was moved back to the west line of the quarter section and put into the fence, the whole quarter was enclosed, and plaintiff's field and premises protected thereby. This we infer from facts shown. Now for a wife, whose husband had "gone to the war," to permit the use of rails so placed, wholly useless as they were, is not an extraordinary exercise of power in one circumstanced as she was, nor would it be a violation of duty in an agent to whom had been specially committed the care and management of a farm during the proprietor's absence, to assent to such an act, as it involved no waste or destruction of the estate or any part of it. An agent appointed to manage a farm has no right to permit spoliations upon it is admitted, but this act, was far removed from one of that character. But whether rightful or not, the rails were removed for a temporary purpose, but were never legally severed from the land. Had they been sold to a stranger and removed to a distant field, or to another county, it could not have been in the contemplation of any party pur-

chasing the land thus stripped of its fence, that he was pur-
chasing rails he never saw. Not so with the defendant.
When he borrowed the rails, the wife of plaintiff said to
defendant, when defendant bought the place, the rails would
be just where he wanted them, that is, on his west line. It
must have been defendant's understanding, as it would be
that of every reasonable man, that having bought the field,
he bought the fence or rails by which it was enclosed. Sup-
pose on the day defendant bought plaintiff's land, he had
returned the rails and piled them up on the land, can it be
doubted, they would have passed with the land? Does it
make any difference that he had not returned them when he
bought the land? We think not.

Other questions are raised in this case. The appellant con-
tends the court erred in permitting proof of the wife's assent to
the loan of the rails, and in admitting the evidence of the plain-
tiff's brother to the same effect. We accord fully in the opin-
ion cited by appellant in *Essington* v. *Neill*, 21 Ill. 142. This
differs from that, in this: That here a part of a string of fence
was standing on the ground, useless, and it was no stretch of
power on the part of either the wife, who was in possession of
the land, or of the general agent of the owner, to loan them to
a neighbor, temporarily. In Essington's case the wife of Rus-
sell, in his absence, had erected a cabin on the land to avail
of the statute of limitations, under a tax title, her husband
being absent, and had directed the defendant to remove some
lumber which the patent owner had placed upon the land, for
the purpose of building a house upon it. Had Mrs. Russell
loaned a neighbor, in her husband's absence, part of a string
of dilapidated fence, this court would hardly have said she
was not the agent of her husband for such a purpose, and to
gave consent to their removal.

It is also objected that the plaintiff was not permitted to
prove what Arnold said to plaintiff about this string of fence
when he sold the property to him. This was properly refused,

for the plaintiff showed no deed for the land from Arnold, and if he had shown one, it would be required that the deed should speak for itself. If it conveyed the south-east forty, all fixtures upon it passed by the deed, but it could not be allowed to prove by parol that one or more rods of the west-forty was admitted to be conveyed, or anything upon that forty. The defendant, when he purchased of Arnold the west eighty, did, in law, purchase this string of fence then upon it, and could have removed it under his purchase, but he precluded himself, by acknowledging the ownership to be in plaintiff by borrowing them. The plaintiff could hardly be permitted to claim the fence and remove it, as it does not appear to be a case provided for by the statute to which reference is made. That statute section 19 only authorizes a person, who by mistake, has erected a fence on the land of another, not knowing exactly where his line was, to enter upon the land and remove the fence, and one year is given after the lines are legally run, so to do. Here it cannot be alleged of plaintiff that he built this fence by mistake, or that it was built by mistake by Arnold, for he had a right to put his fence on his own land wherever he pleased. The plaintiff put no fence there by mistake and it did not pass to him by his deed from Arnold.

As to the instructions, we are satisfied that many of them, both for plaintiff and defendant, are quite objectionable, but as we see from the whole record, that the plaintiff cannot in any court recover, we cannot reverse the judgment for erroneous instructions. The whole matter in controversy is the value of a few hundred half decayed fence rails, which the defendant bought when he bought the land. Justice has been done in the case and we must affirm the judgment.

*Judgment affirmed.*


Walker J.:. I concur in the judgment, but not in all of the reasoning in this case.