*Christian, J.
 

 delivered the opinion of the court.
 

 The controversy in this case arises between a mortgagee and execution creditors as to certain machinery in the possession of the ‘ ‘Harrisonburg Dumber Manufacturing and Merchandise Company.”
 

 Certain persons having entered into a partnership to build and put into operation a sash, blind and door factory, in the town of Harrisonburg, obtained from the Circuit court of Rockingham a charter of incorporation.
 

 This company purchased and paid for four-and-a-half acres of land in the town of Harrisonburg, and erected a building thereon, putting into said building a steam boiler and engine, and also planing, mortising and moulding machine, and entire machinery necessary to carry out the purposes of the company in the manufacture of sash, blinds, doors, flooring, and other building material.
 

 The company seems not to have been prosperous in their operations,’ becoming indebted to numerous creditors, who ■ obtained judgments against it at different times for various amounts.
 

 On the 11th November 1869, the company, through its president and secretary, executed a mortgage upon its property, including land, buildings, machinery, fixtures, &c., to W. D. Green, to secure the payment of the sum of one thousand and forty-five dollars. The deed creating this mortgage, (which it appears was for the benefit of John T. Green, the appellant in this case,) was not recorded until December 8, 1870.
 

 In the meantime numerous other creditors had obtained judgments against the company. Upon some of these judgments executions were issued and levied upon certain machinery—one being levied upon what *is known as a shaper—another being levied'upon the steam engine, which runs or drives the machinery—■ another upon a moulding machine and two planing machines.
 

 Upon the levy of these executions the appellant, who is the beneficial mortgagee, filed his bill of injunction addressed to the judge of the Circuit court of Rockingham, in which, after setting forth the incorporation of the company, the objects and purposes for which it was incorporated, the fact that he was a large stockholder in the company, its indebtedness to him evidenced by the mortgage above noticed, and for other debts due him; the levy of the executions upon the machinery attached to the company’s building—he alleges that said machinery is all attached to the building, and constitutes fixtures firmly fastened to the sale, and absolutely necessary to the purposes for which the factory was established; and if sold under said executions and removed, the .factory would be stopped and rendered valueless. He claimed that the machinery thus levied on, was part and parcel of the realty, and not liable to levy and sale, separate and apart from the building and the land. He asserts that his
 
 *251
 
 mortgage is prior and superior to the other judgments, and insists that if there is to be a sale, the whole property levied on, buildings and machinery shall be sold, and the different creditors paid according to the priorities of their respective claims. He also prays for an injunction to prevent the sale of the machinery levied upon, and to enjoin all proceedings under the said judgments until the various debts outstanding against the company, and the different liens and their priorities could be ascertained; and that the whole property might be sold and the creditors satisfied according to *their respective rights. To this bill the judgment creditors ■were made parties.
 

 An injunction was awarded according to the prayer of the bill, by the Hon. Robert H. Turner, judge of the 14th judicial circuit. Two of the defendants answered the bill— J. D. Price and R. Ball & Co. Price admitted the large indebtedness of the company, and insisted upon a settlement of its affairs; does not object to a sale of the property to pay its debts, but suggests a private sale, instead of a sale at public auction. He denies the validity of the mortgage set up by the plaintiff in his bill; alleging that the deed exhibited therewith was executed without authority from the company, and was informal, null and void; and that if the debt is due from the company, it must stand upon the same footing as other debts. This allegation, affirmative, in the answer, as to the execution of the deed without authority, is not sustained by any proof, and indeed seems to be abandoned ; for when the commissioner reports the debt due to William i). Green as secured by a mortgage, the report is confirmed by the court, without exception.
 

 The only other defendants who answer the bill, are R. Ball & Co. They allege, that they recovered a judgment against the Harrisonburg Humber and Merchandise Company at the May term of said Circuit court, 1870, for the sum of $450.09, with interest from 31st July 1863, and that on the 10th of June, 1870 they caused an execution of fieri facias to be issued from the clerk’s office of said Circuit court, and caused the same to be levied tipon sash moulding machines and two planers {Daniel’s and Surface’s), belonging to said company. They further allege that “they are advised and so answer, that the said property so levied on is, according to the laws of Virginia, not fixtures ^'attached—a realty exempted from levy and sale under an execution of fieri facias—but goods and chattels subject to such levy and sale; and they therefore deny that it is part and parcel of the freehold, or real estate; and deny that the factory would be rendered valueless by the removal of the machinery levied on.” They deny that there would be any necessary injury to the complainant, or any one else, by a separate sale of the property levied on by the sheriff to satisfy the execution on their judgment, and ask that the injunction be dissolved. The other judgment creditors whose executions had been levied upon the steam engine, and the machine known as the shaper, did not answer the bill. A number of depositions were taken, and it was conclusively shown, both, that the different machines and the engines levied upon were firmly fastened to the building in which they were put up, and that they were absolutely essential to the purpose for which the building was erected as a factory of sash, blinds and doors, and other building material.
 

 Two witnesses were examined by the defendants. One of them, Thomas W. Basford, in answer to the question, “How, if at all, are these machines (planers) attached to the realty?” says, “Only, so far as I know, by leather bands running on the band wheel. They ought not. otherwise to be attached, any more than a table. Their weight holds them on the floor.” On cross examination, in answer to the question, “Do you know whether the machines of which you speak are actually attached otherwise than by the bands of which you speak?” says, “I cannot tell; I don’t think they ever were intended to be attached; they may have been nailed to the floor.”
 

 This witness also states, that these planing machines “are essentially necessary to the company for the purpose *of manufacturing, planing lumber, &c., for which they organized.”
 

 The remaining witness for the defendants says, “there is a Daniel’s planer, another planer, and a moulding machine in that factory. The planers are on a dirt floor, and are only attached to the realty by the bands which run on a wheel attached to a shaft, which shaft is attached to the building. The moulding machine is up-stairs, on a plank floor, and, I think, screwed to the floor. I think the, machine stands upon a board, which extends beyond the feet, and it is my impression this machine is fastened to this board. This board is fastened to the floor. It is also attached by bands like the planets. I worked the last machine for some nine months, and I think it ought to be fastened to keep it steady. ’ ’
 

 William C. Price, a witness introduced by the plaintiffs, says, “Prom the organization of the company, I was foreman in the wood department of the concern. I assisted, in connection with Mr. Scott, a regular machinist, in placing in position all the machinery except the Daniel planer. * * * There are sills 10x12 inches imbedded in the ground floor of the building, and the planer is fastened down by screw bolts to those sills. It is also connected by belts to the line shaft of the mill. * * * The line shaft is attached to the driving wheel of the engine by a belt which drives the whole machinery.”
 

 In reply to a question as to how the steam engine (which was also levied on) is fastened, he says, “There are walls built, on which sills are laid, on which the engine is placed, and fastened by bolts passing through these sills, and secured thereto. A
 
 *252
 
 sill then passes from the sills on this foundation to the sills in the main building, and thereto attached, lapped out, keyed and*spiked.” As to the Daniel planer he says: “It is placed on ties embedded in the ground floor, to which it is fastened by screws, and also by braces, which pass from the posts of the planer to the joists of the floor above, to which they are fastened by screws and nails.”
 

 With regard to the moulding machine or shaper, this witness says: “It is screwed fast to the second floor of the building, and also attached to the main line shaft or belt. ’ ’ He further says: “These machines could not be operated unless they were immovably fixed. ’ ’
 

 This witness expressed the opinion that these machines can be detached without serious injury to the building or to the machines.
 

 The evidence of this witnesses is fully corroborated by three others, except that one of them says the surface planer could not be removed without tearing up the floor of the building. All the witnesses on both sides agree that all these machines, with the engine levied upon, are absolutely essential for carrying out the purposes for which the company was organized, and for which the land was purchased and the buildings were erected.
 

 Upon this evidence, and upon the answers of the appellees, the case was heard upon a motion to dissolve the injunction; and the Circuit court, by its decree entered on the 4th day of May 1872, dissolved the injunction it had awarded restraining the sale of the machinery upon which the executions of fieri facias had been levied. It was from this decree that an appeal was allowed by one of the judges of this court.
 

 The main question raised upon the pleadings and evidence in this -cause, and which we now have to determine, is whether the machinery levied upon is of the nature of personalty, which can be taken under an execution of fieri facias, or whether they are of such a character as the law denominates fixtures attached to *and a part of the realty., which pass to the mortgagee. It is true in this case, the deed relied upon as creating the mortgage conveys the machinery as well as the land and buildings; but as that deed was not recorded until after the levy of the executions, it becomes important and necessary to determine whether these machines, engine, &c., are fixtures, which an execution of fieri facias cannot reach.
 

 It is not necessary in this case to go into a consideration of the general doctrine of fixtures by which the nature and legal incidents of this property must be determined, or to notice the distinctions which arise with respect to this kind of property, as between landlord and tenant, vendor and vendee, and heir and executor; which distinctions are sometimes nice and difficult: but in this case it seems sufficient to lay down the following general rules as to this species of property: 1st. A fixture is an article which was a chattel, but which, by being affixed, to the realty, became accessory to it and parcel of it. 2d. The true criterion of a fixture is the united application of the following requisites: annexation to the realty or something appurtenant thereto; application to the use or purpose to which that part of the realty with which it is connected is appropriated; the intention of the party making the annexation to make a permanent accession to the freehold. It is true that many cases may be found which hold, that to give chattels the character of fixtures, and deprive them of that of personalty, they must be so firmly attached to the real estate that the connection cannot be severed without breaking or otherwise injuring the freehold. But the general course of modern decision, both in EJngland and in the American courts, is against adopting, as the criterion for determining the charter of chattels *as fixtures, whether the annexation to the realty be slight and temporary, or immovable and nermanent, and in favor of declaring everything a fixture which has been attached to the realty with a view to the purposes for which it is held or employed, however slight or temporary the connection beween them. See 3 Smith’s Dead. Cases, seventh American edition, 202, and cases there cited.
 

 In the present age, the marvelous increase of manufactures have called into existence numerous establishments, in which the building is the mere incident or accessory to the machinerv or apparatus which it contains. As was said by Lord Mansfield, in Lawton, ex’or, v. Salmon, 1 H. Bl. 259: In cases of this description, to require substantial or even nominal annexation, would exclude things' absolutely essential to the enjoyment or use of the freehold, and include others which are comparatively trivial and unimportant. Whatever is essential to the purposes for which the building is used will be considered as a fixture, although the connection between them is such that it may be severed without physical or lasting injury to either.
 

 In accordance with this doctrine, it has been repeatedly held that a steam engine, erected for the purpose of furnishing the motive power of a manufactory, is to be regarded as a fixture, or, in other words, as a part of the manufactory itself; and there are numerous cases which hold that the machinery of a manufactory is to be regarded as part of the realty, whether it is attached to the body of the building, or merely connected with the other machinery by running bands or gearing, which may be thrown off at pleasure without injury to the freehold. See cases cited in note 2, Smith’s Dead. Cases, supra. *In cases where a building is erected for manufacturing purposes, the machinery gives character and value to the building, and not the building to the machinery. Each must lose its vitality and value by a separation from the other. The public good and individual interest
 
 *253
 
 are therefore both subserved by regarding them as substantially the same, and keeping them together.
 

 It would seem absurd and inconsistent to make the presence of a ligature, a belt, or screw, or nail, essential to the operation of a rule, which is founded upon considerations of a different nature.
 

 In Winslow v. Merchants Ins. Co., 4 Metc. R. 306, Chief Justice Shaw in an able and well considered opinion says: “The rule that objects must be actually and firmly affixed to the freehold to become realty, or otherwise to become personalty, is far from constituting a criterion. Doors, windows, blinds and shutters, capable of being removed, without the slightest damage to a house, and even though at the time of a conveyance or mortgage, actually detached, would be deemed a part of the house, and pass with it. And so we presume mirrors, wardrobes, and other heavy articles of furniture, though fastened to the walls by screws with considerable firmness must be regarded as chattels. The difficulty is somewhat increased when the question arises in respect to a mill or manufactory, where the parts are often so arranged and adapted, so ingeniously combined as to be occasionally connected or disengaged as the objects to be accomplished may require. In general terms, I think it may be said that when a building is erected as a mill or manufactory, and the water works or steam works relied upon to move it are erected at the same time, and the machinery *to be driven by them are essential parts of it, adapted to be used with it and in it, they are parts of it, and pass with it by a conveyance, attachment or mortgage.” See also 1 Ohio 511, and cases there cited.
 

 With regard to factories and the machinery necessary to carry out the purposes for which they are erected, the cases on which the subject differ only in this—some hold that there must be an actual attachment, however slight and temporary, in order to change the character of the chattels from personalty into realty; while others hold that there need be no actual annexation, if the machinery is essential to the objects and purposes for which the building in which the machinery is placed was erected.
 

 In this case these distinctions, often nice and difficult, need not be considered; for in the case before us both of these considerations concur. The machinery was all affixed more or less firmly to the building; and it is admitted on all hands, that the purpose and object of the incorporation of the company, and the purchase of the land and erection of the buildings was to constitute a factory for the manufacture of .sash, blinds, and doors and other building material, and that the building was a mere incident or accessory to the machinery and engine necessary and essential to carry out the primary and leading purpose of the manufactory.
 

 The true rule deduced from all the authorities seems to be this: That where the machinery is permanent in its character, and essential to the purposes for which the building is occupied, it must be regarded as realty, and passes with the building; and that whatever is essential to the purpose for which the building is used will be considered as a fixture, although the connection "’''between them is such that it may be severed without physical or lasting injury to either.
 

 It follows, therefore, that the engine and other machinery in the factory of this company were not personalty, and could not be taken under the executions of fieri facias caused to be issued by the appellees, and that the decree of the Circuit court dissolving the injunction was clearly erroneous.
 

 I am therefore of opinion, that the decree of the Circuit court dissolving the injunction be reversed, and the cause remanded for further proceedings to be had therein according to the principles herein declared.
 

 The decree was as follows:
 

 This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing, and filed with the record, that said decree was erroneous in dissolving the injunction awarded by the judge in vacation on the 21st day of January 1871; this court being of opinion that the motion to dissolve the injunction should have been overruled, and no sale allowed of the machinery levied on under the fieri facias sued out by the judgment creditors; but that said machinery could only be sold with the land and buildings to which they were annexed, and in which they were used; and that whenever it may be proper to decree a sale or lease of the land and buildings for the payment of the debts of the company, the machinery must be sold or leased with them. It is therefore decreed and ordered, that the said decree of said *Circuit court, dissolving said injunction, be reversed and annulled, and that the appellant recover against the appellees his costs by him expended in the prosecution of his appeal here; and that the cause be remanded to said Circuit court for further proceedings to be had therein. All of which is ordered to be certified to the said Circuit court of Rockingham county.
 

 Decree reversed.