# 𝔚heeling.

## PATTON, MALONE & CO. *v.* MOORE *et. al.*

### Decided April 10, 1880.

1880
Special Term.

Patton, Malone
& Co.
v.
Moore *et al.*

1. The true rule in determining what are fixtures in a manufacturing establishment, where the land and buildings are owned by the manufacturer, is, that where the machinery is permanent in its character, and essential to the purposes for which the building is occupied, it must be regarded as realty and passes with the building; and whatever is essential to the purposes, for which the building is used, will be considered as a fixture, although the connection between them be such, that it may be severed without physical or lasting injury to either.

2. If an engine and boiler have been bought by the owner of a mill, and hauled upon his grounds into the mill-yard with the *bona fide* intention of attaching them to the mill, although not yet actually attached thereto, and they are necessary for the purposes for which they are to be used, they must be regarded as a part of the realty, and not liable to the levy of an execution as personal property.

3. If an engine and boiler, after being levied on under an execution, are with the consent of the execution-creditor attached to a mill by the owner, who is the debtor, with the intent that they shall become a part of the realty, the lien of the execution is thereby released.

4. When a flood washes out from a mill the engine, boiler, burrs and mill-irons, which were fixtures in the mill, they are not converted into personal property; and when thus washed out, they are not subject to the levy of an execution.

5. When a purchaser of real property makes permanent improvements thereon attached to the freehold, and then being unable to pay for it surrenders the property to the vendor, without express reservation of the improvements and cancels the contract of purchase the improvements go with the property back to the vendor.

6. Equity will take jurisdiction by injunction to preserve the inheritance; and when a mill is about to be dismantled by execution-creditors of the owner, who have levied on the fixtures attached thereto, equity will interfere to prevent it.

1880
Special Term.

Patton, Malone
& Co.
v.
Moore et al.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Ritchie, rendered on the 29th day of October, 1878, in a cause in chancery in said court then pending, wherein Wilson Patton, Samuel Malone and John M. Brown were plaintiffs, and B. F. Moore and others were defendants, allowed upon the petition of said Moore.

Hon. J. M. Jackson, judge of the fifth judicial circuit, rendered the decree appealed from :

JOHNSON, JUDGE, furnishes the following statement of the case :

In December, 1877, the plaintiffs filed their bill in the circuit court of Ritchie county, alleging that the plaintiff, Patton, purchased of Daniel Rexroad one half of a certain tract of land in Ritchie county containing seventeen acres, upon which was located a water grist and steam saw-mill ; that at the time of said purchase there were attached to said mill as fixtures "*two run of burr mill-stones, a saw-mill engine and boiler ;*" that A. S. Core was the owner of the other half interest in said land and mill-property ; and that the said Patton, on the 26th day of May, 1859, purchased the said interest of said Core. Said contract was in writing; but no deed had been made in pursuance thereof, as the purchase-money had not been paid ; that Rexroad had purchased his interest in said property from said Core, but that no deed had been made, and consequently the legal title to the whole of said property was in said Core ;—that on the 26th day of July, 1861, said Patton sold and assigned to one Charles Meserve the interest he had purchased of said Core ;—that on the 16th day of January, 1867, said Meserve sold and assigned his said interest to Martin Cochrane, he, Cochrane, assuming to pay the purchase-

money due from said Meserve to Patton, whereupon the said Meserve delivered up to said Patton the paper so assigned, and the said Cochrane entered into a written contract with the said Patton for the purchase of the said interest in the said property, which is known as the " Ritchie Virginia Mills";—that said Cochrane being unable to pay the purchase-money, at the earnest solicitation of said Cochrane said Patton took back said interest and all the fixtures thereto belonging or appertaining, and surrendered to said Meserve the notes by him executed for the purchase-money, and Patton took possession of the entire mill and fixtures; subsequently said Patton sold to one Samuel Malone one half interest in said property, and to John M. Brown one fourth interest in said property, and retained for himself one fourth interest therein;—that A. S. Core still holds the legal title to the whole of said mill-property, because all the purchase-money has not been paid to said Core.

The bill further alleges that at the December term, 1870, of the circuit court of Ritchie county, Charles Meserve for the use of B. F. Moore recovered a judgment against Martin Cochrane for $489.16 with interest and costs; that upon said judgment executions issued from time to time; that upon said executions is endorsed the levy of the sheriff, into whose hands the executions were placed; that in said levy the following articles are embraced: " One small engine and boiler, two carding machines and pickers, one set of burrs, and a lot of mill irons, as the property of Martin Cochrane;" that since the said levies with a return of the sheriff thereon a *venditioni exponas* has been issued by the proper officer directed to John B. Hallam, sheriff of Ritchie county, commanding him to sell the property named therein, to wit: " One engine and boiler, and set of burrs and lot of mill-irons;" that said sheriff has advertised said property for sale.

The bill further alleges, that the engine and boiler, and set of burrs and mill-irons so levied on belonged to

said mill, and were attached thereto, and were fixtures,
and *absolutely necessary to the purposes for which said mill*
*was established, and their removal therefrom would stop the*
*said mill and render it useless;* that said articles were
fixtures in said mill, before this mill was purchased from
Core, and have so remained ever since.

The bill made the necessary parties defendants, and
prayed an injunction to the sale of the said property.
The exhibits referred to in the bill are filed therewith.

On the 31st day of December, 1877, the judge of the
circuit court of Ritchie county granted the injunction ac-
cording to the prayer of the bill.

On the 25th of April, 1878, the defendant, B. F.
Moore, filed a general demurrer to the plaintiffs' bill,
which was subsequently overruled. The said defendant
answered the bill, to which the plaintiffs replied gener-
ally. The answer avers that the engine and boiler were
sold by Patton and detached and removed from said mill
before the sale to Meserve, and taken several miles away,
and sometime after, said Patton and Cochrane purchased
said engine and boiler, and removed them to Ellenboro,
West Virginia, and, after they had run the same some
time, sold them, and they were removed out of the coun-
ty of Ritchie into the county of Doddridge, and that
when Cochrane became the owner of an interest in the
mill, there were no engine and boiler attached, and the
engine and boiler, which were in the mill when Patton
purchased of Rexroad, were in the county of Doddridge;
that Martin Cochrane was the undisputable owner of the
whole of said mill-property after his purchase from
Meserve, until he sold to Patton in 1867. The answer
denies that the engine and boiler levied upon by John
Heaton, while sheriff were part of said mill, or in any
way attached to it at the time of the levy; that the levy
by sheriff Mitchell during his term of office was on the
same engine and boiler; that at the time of the levy by
sheriff Mitchell the said engine and boiler were attached
to the mill, and avers that at that time there was no mill

for it to be attached to. The answer denies, that the engine, boiler, one set of burrs and mill-irons were attached to the mill, when the levy was made. The answer avers, that Patton was informed of said levy, when he purchased of said Cochrane, and that Cochrane did not sell said engine and boiler to Patton. The pleader is evidently referring to the surrender of the property to Patton by Cochrane, who was unable to pay for it.

The defendant, A. S. Core, answered the bill; and in his answer says; the legal title to the said property is still in him, and that the purchase-money therefor, amounting, as he says, at the time of filing his answer to about $600 is still due and unpaid; that, when he sold the mill, there was attached thereto an engine, boiler, and two sets of burr mill-stones, and if the same were removed at any time by the equitable owners of the property, it was done without his knowledge or authority; that he claims a lien on the said machinery attached to the said mill including engine, boiler and mill-stones, as a part of the realty, for his said purchase-money.

A number of depositions were taken in the cause. So much only of the testimony will be set out as bears upon the question, whether the property levied upon and exposed for sale under the *venditioni exponas*, were chattels or fixtures.

*Wilson Patton* says, when he purchased an interest in the mill from Rexroad, there were in the mill "two run of burrs, mill-stones, a saw mill, engine and boiler." He says, that the property levied on, "one small engine and boiler, two carding machines and pickers, one set of burrs and one lot of mill-irons," are fixtures belonging to said mill and were always so, except the carding machines; that they are not the property of Martin Cochrane, and were not at the date of the levy; that said engine and boiler and set of burrs were absolutely necessary to the purposes for which the mill was established, and their removal would render the mill valueless. All the property except the engine and boiler have been attached

1880
Special Term.

Patton, Malone
& Co.
v.
Moore et al.

to the mill all the time, except when they were all detached by a flood and were washed out of the mill. A new building has since been put up. The burrs are in the mill attached in the usual way. The boiler now lies below the mill, where the flood left it; and part of the engine and fixtures have never been in the mill since the flood. Upon cross-examination he says : "I reserved the engine and boiler when I sold to Meserve, and sold the engine and boiler to John Parker. The engine and boiler were taken out of the mill and taken over to Slab creek. Cochrane and I purchased the said engine back from John Parker; and Cochrane and I moved it to Ellenboro, where we run it with a saw-mill attached. Then we sold it to Jeffrey Davis & Co.; and they moved it to Doddridge county; and Martin Cochrane bought the said mill from Charles Meserve in 1867. At the time of said purchase the engine and boiler were not in the mill that were there when I purchased it. I cancelled the contract with Cochrane in 1877, he being unable to pay the purchase-money. I took the property back. I don't think the same mill was there that was there when I purchased it, it having been swept away by the flood. At the time I took the mill back the property was right where it now is, and one pair of the burrs was running, and the other was on the bank of the river, where it had been brought out of the river, where the flood had washed them, and were not attached as yet, but were in the mill-yard. * * A part of the engine and boiler was on the bank, and parts of it were scattered up and down the river at the time I took the property back. * * * I knew the sheriff had levied upon the engine, when I took the property back, but did not know that he had levied upon the burrs. I did not go to the clerk's office to know before I took the property back what the sheriff had levied upon. Cochrane claimed the right of possession to all the property at the time I took it back and had it in possession."

*Cochrane* says he delivered to Patton all that was in

the mill as fixtures when he purchased, consisting of two sets of burrs, all the irons that belonged to the mill when he purchased; all the mill was carried away by the flood but the burrs and the mill-irons. What could be found, he brought back and raised a new frame, and put the fixtures in, as far as he got them, before he delivered them to Patton, and got them to running. The engine boiler, set of burrs and old mill-irons, levied upon by the sheriff on the 9th day of October, 1875, were fixtures in the mill at that time. On cross-examination he says : "The engine was in the mill, but the boiler was not, when John Heaton levied on it. I bought the engine, boiler and fixtures of Elhanon Davis of Doddridge county, and moved it to said mill, after I purchased it. I did not know there was a levy on any of the property, except the engine, when I *sold* it to Mr. Patton ; and I informed Mr. Patton of the levy on the engine." He explains, that he meant not sold to Mr. Patton, but that he cancelled the contract. He said he had the contract for the whole property, at the time Patton took it back, and had it in his possession but had not the legal title to it, that being in A. S. Core.

When his deposition was again taken, on the 29th of August, 1878, he says: "The engine (what I can find of it) is on the bank of the river about one hundred and twenty feet from where the mill stands. The engine was in the mill when the flood came and was washed down the river; and I hauled it back where it is now on the bank of the river. The boiler is not moved from the place it occupied in the mill more than two feet. This is the only engine which was ever levied on, and there is only one engine at the mill, and this is the engine sought to be sold. After the levy (by Heaton, evidently on the 30th of December, 1870) *the defendant, Moore told me to go on and put the engine in the mill.*" On cross-examination he says, that Heaton levied on the engine and boiler, before they were put in the mill, and that they were not removed to Doddridge

1880
Special Term.

Patton, Malone
& Co.
v.
Moore *et al.*

county afterwards. He says that in his trade with Patton, by which he let him have the mill back, he did not let him have the engine and boiler, and that he did not sell them to him. He says: "I was to give him (Patton) back the mill just as I got it. The burrs were in the mill when I got it, but were not in the mill when I let Patton have it back, having been taken out of the mill by a freshet, (or the act of God). The burrs were in the mill-yard where they had been brought from where the freshet took them." The freshet occurred on the 2d day of August, 1875. It was about twelve months after the freshet, before he let Patton have the property back.

The defendant, B. F. Moore, in his deposition says: "I had a conversation with Martin Cochrane about said engine and boiler. Martin Cochrane said he had not sold the engine and boiler to Wilson Patton. He said, as soon as he could raise some money he would go to Clarksburg and try to sell the engine and boiler, and pay me the money. Martin Cochrane told me on the 8th day of March, 1878, at the time depositions were taken for plaintiffs in this suit, after said Cochrane had given his testimony. He says that the engine and boiler were not attached to the mill at the time sheriff Heaton levied on them, and further says, in this connection : "Martin Cochrane told me, that if I would not wait on him and give him time, he would not fix them in the mill at all." He then says, he never released the engine and boiler. But he does not say that he did not give his consent after the said levy, that Cochrane should attach them to the mill. The evidence is all agreed that the flood washed the engine and burrs out of the mill.

*John Heaton* says, when he made the levy on the engine and boiler: " They were at the mill mentioned in the bill. They were not connected with the mill in any shape. They were in what we may call the mill-yard, as close as they could be until set up." On cross-examination, in answer to the question : "What portion of

the property levied on by you, if any, has been put into the mill, or attached to the freehold since you made your levy?" he said : "The engine and boiler, I presume ; I did not levy on the burrs; the burrs were in the mill."

It is clear from the evidence that the engine and boiler were brought into the mill-yard, by Cochrane, who was at the time the equitable owner of the mill property, with the intention of attaching them to the mill, and that shortly thereafter they were attached to the mill, and so remained for nearly five years, when the engine was washed out by the flood, as were also the burrs ; that while the engine and boiler were in the mill-yard, as aforesaid, on the 30th day of December, 1870, they were levied on by sheriff Heaton, under the execution in the case of *Meserve, use of Moore* v. *Cochrane ;* and that a short time thereafter they were actually attached to the mill *with consent of said B. F. Moore, who* controlled said execution ; and that said engine and boiler were not levied on again until after the flood in August, 1875, when they were levied upon by B. F. Mitchell, sheriff of Ritchie county under an *alias fi. fa.*, issued on the same judgment.

In October, 1878, the court by its decree perpetuated the injunction with costs to the plaintiffs. From said decree said defendant appealed and a *supersedeas* was also granted thereto.

*Thomas E. Davis*, for appellant, cited the following authorities :

4 H. & M. 498 ; 2 H. & M. 105 ; 4 Leigh 590 ; 1 Rob. 323; 3 Rand. 25 ; 11 W. Va. 239 ; Hill Fixtures 15, 16; 19 Barb. 317 ; 12 Pa. St. 304; 15 Pa. St. 507 ; 16 Ark. 511 ; 6 W. Va. 185 ; 3 Atk. 15 ; 3 Rand. 586; 20 Wend. 639.

*R. S. Blair*, for appellees, cited the following authorities :

4 Min. Inst. 837 ; *Id.* 822 ; 6 W. Va. 418 ; 26 Gratt. 752 ; Code, 669, 670.

JOHNSON, JUDGE, delivered the following opinion of the Court:

1880
Special Term.

Patton, Malone
& Co.
v.
Moore *et al.*

That a steam engine and boiler, burrs and mill-irons necessary to the running of a mill as such are fixtures, is not now an open question. We have no hesitation in approving the conclusion of the Court in *Green* v. *Phillips et al.*, 26 Gratt. 752, which is, that the true rule in determining what are fixtures in a manufacturing estabment, where the land and buildings are owned by the manufacturer is, that where the machinery is permanent in its character, and essential to the purposes for which the building is occupied, it must be regarded as realty, and passes with the building; and that whatever is essential to the purposes, for which the building is used, will be considered as a fixture, although the connection between them be such that it may be severed without physical or lasting injury to either. In *Lewis, Receiver, &c.* v. *Rossler, Sheriff, supra*, this Court held, that the words *fixtures* and *appurtenances* have acquired a peculiar and appropriate meaning, and are to be construed according to such meaning, having due reference to the context, and the connection in which the words are used.

Syllabus 1.

In the case at bar the description of the property in the contract of sale is the "Ritchie Virginia Mills," with a tract of about seventeen acres of land on which said mills are situated. That contract of course passed the mills and fixtures which were a part thereof, consisting of engine, boiler, burrs, mill-irons, &c. The engine, boiler, burrs and mill-irons in controversy in this suit were on the property when the plaintiff, Patton, acquired an equitable title thereto. When Patton sold to Meserve, he reserved the engine and boiler, and sold them to another party. As far as Patton's rights were concerned, there was a complete severance of the property, and a conversion into chattels. *Lewis, Receiver &c.* v. *Rossler, Sheriff, &c., supra*. Patton then cancelled his contract with Meserve, and let Cochrane have the mill-

property on the same terms as specified in his contract with Meserve. At this time certainly Patton would have had no right to complain, if the engine and boiler had been levied on and sold under an execution in favor of any one, as he had parted with his right to them. We are not considering the rights of Core in the premises, or whether he would have had a right to enjoin the severance of the engine and boiler from the mill.

But while Cochrane was in possession of the mill-property under his purchase from Patton, he purchased the same engine and boiler with the manifest intention of again making them fixtures in the mill, and had for that purpose hauled them into the mill-yard, and before he had put them into the mill, they were on the 30th day of December, 1870, levied on by sheriff Heaton, under an execution in favor of *Meserve, for the use of B. F. Moore* v. *Martin Cochrane.* Were they liable to be so levied upon at that time?

In *The Congregational Society of Dubuque* v. *Fleming,* 11 Ia. 533, a bell had been used in the belfry of an old church-edifice of a religious society; a new building was erected and the old one sold, the bell being reserved. A tower was erected on the new building for the bell and a temporary frame-work was also erected upon the lot, upon which the bell was placed and used for church purposes with the *intention* on the part of the authorities of the society to place it permanently in the tower. It remained in the tempory frame for nearly a year, and was then removed to the place designed for it. It was held, that it never ceased to be a fixture, and that it was not subject to the levy of an execution as personal property.

In *Palmer* v. *Forbes et al.,* 23 Ill. 301, it was held, that the rolling stock, rails, ties, chains, spikes, and all other material brought upon the ground of the company and designed to be attached to the realty should be considered as a part of the realty. This decision was approved in *McLaughlin* v. *Johnson,* 46 Ill. 163. In the former case the court said: " It is a familiar principle,

that rails hauled on to the land designed to be laid into a fence, or timber for a building, although not yet erected, but lying around loose, and in no way attached to the soil, are treated as a part of the realty and pass with the land as appurtenances." See also *Bishop* v. *Bishop*, 1 Kern. 123.

1880
Special Term.

Patton, Malone
& Co.
v.
Moore *et al.*

We think this is sound reasoning. If this were not so, persons involved in any degree would not have much encouragement to erect permanent improvements. They might have all their arrangements made to build, their contracts made, the material all on the ground, and the whole scheme might be frustrated, and irreparable loss inflicted by the levy of an execution on the materials thus collected and on the ground. And so with regard to a mill. It might be all complete except the engine and boiler, the motive power, without which it would be useless, and that is brought upon the ground to be attached, and before it is actually attached, it is taken in execution, and the whole mill-scheme, it may be, frustrated. We hold, therefore, if an engine and boiler have been bought by the owner of a mill, and hauled into the mill-yard with the *bona fide* intention of attaching them to the mill and they are necessary for the purpose for which they are to be used, they must be regarded as a part of the realty, and not liable to the levy of an execution as personal property. The engine and boiler in this case were not liable therefore to be levied on as personal property by John Heaton, sheriff of Ritchie county, on the 30th day of December, 1870.

Syllabus 2.

But if this were not true, and they were at that time mere chattels, they became a part of the realty by being attached to the freehold, with the consent of the execution-creditor, and the lien of the execution, if any existed, was thereby released. In *Heaton* v. *Findlay*, 12 Penn. St. 304, the owner of land sold a fixture to A., which was temporarily severed from the freehold. He then sold the land to B., with notice of the previous sale of the fixture. The fixture was never actually delivered,

Syllabus 3.

and it was in a short time *re-annexed* to the freehold and continued to be so used. At the date of the sale of the fixture there was a judgment recovered by a stranger against the owner of the land, which was a lien thereon; under this the land was sold to B. It was held that B. thereby became the owner of the fixture, nor is his title as sheriff's vendee affected by his knowledge of the sale, nor by his own previous admission that the fixture belonged to A., there being no contract or consideration for such statements, which would preclude him from acquiring such title, as a stranger might have acquired by such purchase. See also *Goddard* v. *Bolster et al.*, 6 Me. 427.

If Moore, the execution-creditor, had a lien on the engine and boiler by virtue of the levy, it was of course in his power to release that lien; and if by his consent the property was made a part of the freehold, that was certainly a most effectual mode of releasing his lien, because the power to enforce it under execution was forever gone. That Moore did intend, when he gave his consent after the levy that the engine and boiler should be attached to the mill, to release his lien on the property, if any he had under the levy, is made conclusive by the fact, that he lay quiet for nearly five years, and when the mill was washed away by the flood, he again had another execution issued upon the judgment, which was by B. F. Mitchell, sheriff of Ritchie county, on the 9th day of October, 1875, levied upon the same engine and boiler. Did the severance by the flood on the 2d day of August, 1875, convert the engine, boiler, burrs and mill-irons into chattels, so that they were subject to the levy of the execution on the 9th day of October, 1875? According to the decision in *Buckout* v. *Swift*, 27 Cal. 433, which laid down the broad proposition, that the severance and removal of a house from the freehold changes the character of the house from real to personal property, whether the severance is by the act of God or of man, it did have that effect. But we cannot approve

that decision, and announced a contrary one in *Lewis, Receiver, &c.* v. *Rossler et al., supra.* We find no authority to sustain the California decision; but on the contrary it was held in *Rogers et al.* v. *Gilinger et al.,* 30 Penn. St. 185, that the fragments of a building, blown down by a temptest, are not thereby converted into *personalty,* but pass to the purchaser of the *realty* at a sheriff's sale. Strong, Judge, in delivering the opinion of the Court said: "What then is the criterion by which we are to determine whether that which was once part of realty has become personalty on being detached? Not capability of restoration to the former connection with the freehold, as is contended, for the tree prostrated by the tempest, is incapable of re-annexation to the soil, and yet remains realty. The true rule would rather seem to be, that which was real shall continue real, until the owner of the freehold shall by his election give it a different character."

In *Goddard* v. *Bolster et al.,* 6 Me. 427, the agent of the owner of a grist-mill having put into it his own mill-stones and mill-irons it was *held,* that they became thereby the property of the owner of the mill, as part of his freehold, so that the agent could not lawfully sever them again; nor could his creditors seize them for his debt, *though the mill had been destroyed by a flood and they alone remained.* We conclude therefore, that it is a clear legal proposition, that the washing out of a mill by flood, of an engine, boiler, burrs and mill-irons, which were fixtures in the mill, does not convert them into personal property; and when thus washed out, they are not subject to the levy of an execution. [Syllabus 4.]

After they were thus washed out, Cochrane raised a new frame, the old having been carried away by the flood, got part of the fixtures back into the mill, and got it to running again, perhaps by water-power, and being unable to pay for it surrendered the mill-property to Patton, and took back and cancelled the notes for the purchase-money, without any express reservation of the

1880
Special Term.

Patton, Malone
& Co.
v
Moore et al.

Syllabus 5.

Syllabus 6.

engine and boiler.  We think it is an undisputed propo-
sition, that where a purchaser of real property, who
makes permanent improvements thereon attached to the
freehold, and then being unable to pay for it surrenders
the property to the vendor, without express reservation
of the improvements, and cancels the contract of pur-
chase, the improvements go with the property back to the
vendor.  Therefore when Cochrane surrendered the mill-
property to Patton, the engine and boiler, which he had
attached to the mill, not being expressly reserved, be-
came the property of Patton.

It is insisted in the argument, that the demurrer to the
bill ought to have been sustained, because a court of
equity had not jurisdiction.  Equity will take jurisdic-
tion by injunction to preserve the inheritance, and where
a mill is about to be dismantled by execution-creditors of
the owners who have levied on the fixtures attached
thereto, equity will interfere to prevent it.  This doc-
trine is recognized by this Court in *Ferrell* v. *McMillan*,
6 W. Va. 223.  The cases cited by counsel for appellant
do not apply to a case like this.  The jurisdiction in a
case much like the one before us was sustained in *Green*
v. *Phillips et al.*, 26 Gratt. 752.

For the foregoing reasons the decree of the circuit
court of Ritchie county is affirmed with costs and $30.00
damages.

THE OTHER JUDGES CONCURRED.

DECREE AFFIRMED.