# CHARLESTON.

## CITY OF WHEELING *v.* BAER.

Submitted Sept. 15, 1892.—Decided Oct. 6, 1892.

CONTRACT—TITLE—RENT—LIEN.

Where one contracts to furnish material and build a bridge for a city, stones prepared for the bridge remain the property of the contractor until put into the bridge-structure and are liable to process for his debts, unless the contract otherwise provide. This is so though the contract provides that, as the work goes on, estimates of it shall be made by the engineer, which, if he choose, may include acceptable material and a percentage of such estimate to be at once paid, and the residue upon completion of the bridge, and an estimate is made including such stone, and such percentage of it paid to the contractor.

*T. S. Riley* for plaintiff in error cited 5 El. & Bl. 772; 159, S. E. Rep. 408; Ben. Sales § 108; 6 Taunt. 322; 4 M. & W. 687; 11 M. & W. 243; 9 R. I. 53; 32 Ia. 165; 80 Ill. 553; 18 Pa. St. 52; 62 Pa. St. 9; 2 Serg. & R. 170; 1 McC. 189; 1 Har. & G. 308.

*Henry M. Russell* for defendant in error cited 15 S. E. Rep. 408; 16 W. Va. 428; 28 W. Va. 1; 27 W. Va. 27; 27 Mich. 324; 15 Gratt. 434; 7 Gratt. 240.

BRANNON, JUDGE:

Paige, Carey & Co. made a contract with the city of Wheeling to build for the city a bridge over Wheeling creek, but, after doing much of the work, became insolvent and abandoned it. Henry Baer, who had leased to Paige, Carey & Co. a lot of land, on which they deposited and prepared stone and other material used in the construction of the bridge, sued out a distress-warrant for rent due him from Paige, Carey & Co., which was levied on certain stones on said lot, on which most of the work necessary to fit them for the bridge had been done. The city then filed its petition in the Circuit Court of Ohio county, claiming the said stones, denying their liability to said distress warrant, and

asking a trial of the right to said property and upon trial the court held the said property liable to said rent under said distress-warrant, and the city has sued out the present writ of error.

To sustain its pretension, the city of Wheeling must successfully maintain, either (1) that the title to those stones had vested in it, and that they were not liable to levy for rent; or (2) that they had become in law part of the bridge as fixtures.

The contract simply provided that Paige, Carey & Co. should build and complete this bridge, furnishing all material, and that estimates should be made from time to time, as the work progressed, of the work done, and, at the engineer's discretion, on acceptable material upon the ground; and the city was to pay eighty *per cent.* of such estimates, and pay the remaining twenty *per cent.* after the final completion and acceptance of the bridge. The stones in controversy had been included in an estimate, and the city had paid the contractors eighty *per cent.* of the estimate including them.

Plainly this was a contract to build a bridge, and not a sale of either that bridge or the constituent materials to be used in its construction. These materials remained the property of Paige, Carey & Co. until incorporated into the permanent structure of the bridge. Did the city purchase each stone prepared for the bridge? I think not.

In *Crockett* v. *Latimer*, 1 Humph. 272, Brown contracted with Crockett to build a brick house at eight dollars per thousand for the brick, and Crockett was to and did advance money to the hands employed by Brown; and it was held that the brick made by Brown were his till put into the house and subject to executions against Brown.

In *Moore* v. *Cunningham*, 23 Ill. 328, it was the incorporation of the brick into the wall which was recognized by the court as passing title to them from the builder.

*Tripp* v. *Armitage*, 4 Mees. & W. 687, was a contract for building a hotel, and sash frames intended for it were sent to it, approved by the superintendent, and sent back to the builders' shop, with iron pulleys belonging to the hotel owners, with directions to fit them in the frames, which was

done, and before the sash were taken away the builder became a bankrupt. The court of exchequer held that property in the frames had not passed out of the builder. Lord ABINGER put it on the ground "that there had been no contract of sale and purchase of goods as movable chattels, but a contract to make up materials and fix them, and, until they are fixed, by the nature of the contract the property will not pass." He put it as a test that if the frames had been destroyed by fire the builder would have lost them, for the hotel-owner was not bound to pay for anything till put up and fixed. Baron PARKE said: "In this case there is no contract at all with respect to these particular chattels; it is merely parcel of a large contract." This language is pointedly applicable in this case.

In *Wood* v. *Bell*, 5 El. & Bl. 772, steam engines were designed for a ship, and there was a quantity of iron plates and angles specially made ready to be riveted to it, lying partly at the wharf and partly elsewhere, and other materials in like condition, prepared expressly for the ship, but not yet fixed to it. The higher court said that it did not follow that because the ship, as constructed from time to time, became the property of the party paying for her construction, the materials designed for it passed also. The chief justice said: "What is the contract? The contract is for the purchase of a ship, not for the purchase of everything in use for the making of a ship; not for the purchase of everything bought for it." See later case of *Seaths* v. *Moore*, 11 App. Cas. 350; Benj. Sales (6th Ed.) by BENNETT §§ 271, 342*b*.

In the New York case of *Andrews* v. *Durant*, 11 N. Y. 35, it is held that the general rule is that, under a contract for building a vessel or other thing no property vests in the person, for whom it is to be built, until finished and delivered, and that the rule is the same where certain portions of the contract price are agreed to be paid and are paid to the builder at specified stages of the work, and where an agent of the person for whom the article is to be constructed is to and does superintend and approve the materials and work. So, also, in *Elliott* v. *Edwards*, 35 N. J. Law, 265. In both cases it is said that such is the settled

American law, and that such was the English law until 1822, when a different doctrine was announced in *Woods* v. *Russell*, 5 Barn. & Ald. 942, which was criticised, but reluctantly followed, in *Clarke* v. *Spence*, 4 Adol. & E. 448. Even where a vessel had been more than one third built and more than one third paid for, it was lawfully seized in execution for the builder's debt, *Merritt* v. *Johnson*, 7 Johns. 473 ; and where it was paid for in advance, the vessel built, and the name of the owner placed on it, it was held that title had not passed, *Mucklow* v. *Mangles*, 1 Taunt. 318. See Benj. Sales (Bennett's Ed.) 256, 268.

This case is not the case of a vessel, but the point is that, if where the contract is to build a vessel, title does not pass till its completion, for a stronger reason title to materials prepared for it would not pass; and for similar reasons title to materials prepared for a house or bridge would not, unless the contract so provided. Would the right to surplus material not needed for the construction of a house be in the person for whom it is built? Again, the work on these stones had not been entirely done. And still again they had not been delivered to the city at the only place where by the contract they were to be delivered, in the bridge, if we can at all speak of their separate delivery, and in the only shape in which they were to be delivered, as component and inseparable parts of the bridge. When an order is given to a tradesman to make an article for the purchaser, as a ship or watch, and it is not finished or delivered, no property has vested in the purchaser unless it has been stipulated otherwise. 1 Chit. Gen. Pr. 125.

*McElderry* v. *Flannagan*, 1 Har. & G. 308, does not help the city. There was a contract to build a vessel, the carpenter only furnishing the material requiring carpenter work, the other party furnishing all other material and work. The court properly held the right to the vessel in the one for whom it was built, and that the builder had a right to so much of the contract price for his work as was unpaid, and that was liable to his debts. But here the city is claiming merely the material.

*White* v. *Miller*, 18 Pa. St. 52, is not a lucidly stated case but can not help the appellant. A material man furnished

material for a house, delivering it to the contractor on the ground where the building was going up, and it was levied on and sold under an execution against the contractor. The point and gist of the court's argument was that it was sold on the credit of the building; that is, to the owner. The case was a claim by the material man for money for the material against the owner and contractor; not a claim to the specific material sold under the execution. It was under the Pennsylvania mechanic's lien law, and the court said that "the legislature established the principle that materials and labor are to be considered as having been furnished on the credit of the building, not of the contractor."

As to any claim that the stones, though never annexed to the bridge, were constructively a part of it and real estate being fixtures, some of the authorities above cited repel this idea. Moreover, to apply this doctrine of constructive annexation, so as to make an article intended for use with the realty a fixture, both should be owned by one person. Here the bridge was vested in the city; the stones, in the contractor. Herm. Ex'ns, 163; *Patton* v. *Moore,* 16 W. Va. 428, p't 1 syllabus.

The payment of an estimate including these stones can add nothing to the appellee's case. The contract did not deal with them or any material distinctively, as regards title or delivery. It was not payment for them distinctively, but a partial payment on the whole work. The city did not buy these identical stones. If destroyed, the loss would have been that of the contractors. And could they not have substitued other stones in place of these, and have complied with their contract? If it could be said that by partial payment of the estimate a lien or charge was created on the stones in favor of the city, it would, I think, be subordinate to the rent-lien, because arising after the commencement of the tenancy. Code, c. 93, § 12. Judgment affirmed.

Affirmed.